GARDINER C. HALL *v.* THE VERMONT & MASSACHUSETTS RAILROAD COMPANY.

*Contract. Corporation. Directors. Reasonable expenses. Statute of limitations.*

Charges against the defendants, (an incorporated railroad company,) for services rendered by the plaintiff in procuring the passage of their act of incorporation, disallowed;—the services appearing to have been voluntarily rendered, and there having been no subsequent promise to pay them. No previous promise could be implied, when, at the time the services were rendered, the defendants were incapable of making an express contract.

Charges for services of the plaintiff, who was one of the corporators named in the defendant's act of incorporation, in procuring the stock subscriptions necessary for a full organization of the company, allowed, though there was no express promise for their payment. The services being necessary, a promise for their payment would be implied.

Charges allowed also for services rendered by the plaintiff as a member of a committee of the corporators, and also of the directors, for procuring additional stock subscriptions, the corporators having voted, at the time the plaintiff was appointed a member of the committee, "that all reasonable expenses incurred in taking

27

stock shall be audited and allowed;" and the directors, at the time the plaintiff was appointed a member of their committee, having voted to allow such compensation as they should deem proper, not exceeding one per cent if the subscriptions should be satisfactory,

*Held* that the "reasonable expenses" mentioned in the vote of the corporators was not limited to cash expenditures, but extended also to personal services expended.

Charges for similar services rendered after a rescision of the above vote of the directors, and after the stockholders had voted that no compensation should be allowed for such services, except under particular circumstances, disallowed.

Directors, as a general rule, are not entitled to compensation for their personal services unless rendered under some express contract.

The statute of limitations does not commence running against a foreign corporation until they have attachable property in this state, although, previous to that time, there may be directors and stockholders of such corporation residing in the state.

The statute, (Comp. Stat. ch. 31 §19, p. 244,) providing for the service of writs upon corporations, by leaving copies with any of their officers or stockholders in the absence of their clerks, has reference exclusively to corporations within this state.

BOOK ACCOUNT. The nature of the disputed items in the plaintiff's account, sufficiently appear in the auditor's report, which was as follows.

" I find and report, that there is due from the defendants to the plaintiff, to balance book accounts between them, the sum of $ 893.55,—subject to the opinion of the court upon the following statement of facts."

" The defendants are a corporation, chartered by the legislature of Massachusetts on the 15th day of March, 1844. Charges numbered 80, 81 and 82, in the plaintiff's account, are for services rendered by him, at Boston, in endeavoring to procure the charter, previous to its enactment. The citizens of Brattleboro, where the plaintiff resided, were desirous that the corporation should be created, and held public meetings, and appointed committees to act in the matter, and many citizens of Brattleboro went to Boston for that purpose, and, among others, the plaintiff, who was a large real estate holder in Brattleboro, and felt a deep interest in the matter, expecting that the value of his estate would be thereby advanced. The services charged for were rendered by him, and are charged at a reasonable price. The plaintiff was not employed by any per-

son to go to Boston for this purpose; and there has been no express promise by the defendants to pay for these services; and I have disallowed the charges. But if the law, under these circumstances, will imply such promise, so as to make the defendants liable, then the said items, with the interest thereon, amounting to $ 119,39, should be added to the above sum of $ 893,55.

"The plaintiff was one of the corporators named in the defendant's charter, and, as such, he rendered necessary services in attending various meetings of the corporators held after the acceptance of the charter by them, and previous to the ultimate organization of the corporation by the stockholders and the choice of directors,— which was November 21, 1844. There has been no express promise by the defendants to pay for these services; but being of opinion that such promise would be implied, I have allowed the items for these services,—numbered 83, 84, 85, 88 and 90. If this conclusion as to the law is erroneous, then the amount of these items, with the interest,—being $ 18.12,—is to be deducted from the above named sum of $ 893.55.

" At a meeting of the corporators, held May 21, 1844, at which the plaintiff was present, the corporators voted as follows, " that all reasonable expenses incurred in taking stock shall be audited and allowed by this board," and appointed the plaintiff and one Everett a committee " to make arrangements for going to Boston to take stock." Efforts were then made by the plaintiff, and by others, to procure subscriptions to the capital stock, and so much was obtained, that, on the 21st of November, 1844, the corporation was organized, the charter accepted and by-laws adopted; and on the 22d of November, 1844, directors were chosen, of whom the plaintiff was one. At a meeting of the directors, held January 15, 1845, at which the plaintiff was present, the following vote was passed,—" that a committee of three be appointed to obtain additional subscriptions to the stock of the corporation, to an amount not exceeding $ 300.000.00, and, in case the subscriptions shall be satisfactory to this board, to allow such compensation as this board shall deem proper, for obtaining such additional stock, provided that the compensation shall, in no case, exceed one per cent on the amount of the subscriptions so obtained." At a meeting of the di-

rectors, held February 6, 1845, at which the plaintiff was present, it was voted as follows,—"that the vote passed January 15th, concerning obtaining subscriptions and paying a compensation therefor, be and hereby is rescinded." And at a meeting of the stockholders, held February 13th, 1845, at which the plaintiff was present, a vote was passed as follows,—"that no bills for personal services, or expenses, for procuring subscriptions for stock, be allowed to any person unless employed by the corporation, and that no compensation shall be allowed to the directors of the corporation for their services in that capacity."

"Items No. 86, 89, 91, 92, 93, 94, 1, 3, 5 and 7, of the plaintiff's account, are charges for services rendered by him in procuring subscriptions, in Boston, to the capital stock of the corporation, subsequent to the vote of May 21, 1844; and items Nos. 4, 6 and 8, are for cash expenses incurred by him, while so employed. The defendants insisted, at the hearing, that the vote of May 21, 1844, should be construed only as a promise to pay the cash expenses incurred in procuring subscriptions; but being of opinion that the vote, under the circumstances, should be construed as extending to personal services expended, as well as to cash expenses, and that the appointment of the plaintiff upon the committee then raised was an express authority to him to render such services, I have allowed the items as charged, except item No. 94, which I have allowed at $20.00, and item No. 7, which I have allowed at $30.00. As allowed, the services were rendered, and the price charged is reasonable. The cash expenses incurred by the plaintiff in 1844, while engaged in this business, have been heretofore paid by the defendants. If the defendants are correct in their construction of the vote of May 21, 1844, and, in law, it restricted the right to charge to cash expenses only, items No. 86, 89, 91, 92, 93, 94, 1, 3, 5 and 7 should be disallowed, and their amount with the interest thereon, being $382.72, should be deducted from the sum of $893.55, above mentioned. Or, if the defendants are not bound by any agreement of the corporators to pay for these services, and no promise to pay for such services, will, in law, be implied against the corporation, until after its organization by the choice of directors in November, 1844, then items No, 86, 87, 89,

91, 92, 93 and 94 should be disallowed, and their amount, with the interest, being $238.58, should be deducted from the above named sum of $893.55.

"Items No. 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 30, 33, 35, 37, 39, 41, 43, 46, 48, 50, 52, 54, 56, 58, 61, 64, 66, 68, 70, 73 and 77, are charges for services rendered by the plaintiff, as director, subsequent to the vote of February 13, 1845, and I have disallowed them.

"Items No. 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 31, 34, 36, 38, 40, 42, 44, 47, 49, 51, 53, 55, 57 59, 60, 62, 63, 65, 67, 69, 71 and 74, are charges for cash expenses incurred by the plaintiff, while rendering services for the defendants as director. The plaintiff's right to recover for these charges was not controverted, (except in respect to the statute of limitations, as hereinafter stated,) and I find the amount correct, and allow them as charged, with the exception of Nos. 60 and 63, which I have allowed at $3.00 each.   *   *   *

"The defendants insisted upon the statute of limitations, as a defense to items No. 80 to 94 inclusive, and to items No. 1 to 18 inclusive, being all the items which accrued previous to August 21, 1845. The writ in this suit bears date, August 21, 1851, and was served August 23, 1851. It was conceded that there has always been a director of the defendants' resident in Brattleboro, within this State, and that there have also, at all times, been stockholders of the defendants resident within the state since the organization of the defendants in November, 1844. But the defendants first had known attachable property within this state in 1847.   *   *   *

"If, upon these facts, the statute of limitations applies to all that portion of the plaintiff's account, which accrued previous to August 21, 1845, there should be disallowed, in addition to the items charged previous to that date, which I have above stated as disallowed, items No. 83, 84, 85, 86, 87, 89, 90, 91, 92, 93, 94, 1, 3, 4, 5, 6, 7, 8, 10, 12, 14, 16 and 18,—amounting, with the interest, to $555.40,—which sum of $555.40 should be deducted from the above named sum of $893.55.   *   *   *

"The defendants gave in evidence their act of incorporation, together with the general railroad law of Massachusetts, from the revised statutes of Massachusetts of 1835; and the same are made

a part of this report, so far as they affect any of the questions herein submitted."

On the foregoing report, the county court, September Term, 1854,—UNDERWOOD, J., presiding,—rendered judgment for the plaintiff, to recover the amount allowed by the auditor, to which the defendants excepted; and the plaintiff excepted to the disallowance of all disallowed by the auditor.

*E. Kirkland* for the defendants.

*J. D. Bradley* for the plaintiff.

The opinion of the court was delivered by

ISHAM, J. The auditor has reported the sum of $893.55, as being due to the plaintiff on his account, for which sum judgment was rendered by the county court and on which both parties have taken exceptions. The charges in the plaintiff's account, No. 80, 81, 82, amounting with the interest thereon to the sum of $119.39, were properly disallowed. Those services were rendered by the plaintiff at Boston, in conjunction with other citizens of Brattleboro, in procuring the charter of this company, and they appear to have been voluntarily rendered, as it was anticipated by him that the construction of the road would give an increased value to his real estate. The plaintiff could not have been employed by the defendants to render those services, for the corporation at that time had not a legal existence, nor has there been any subsequent promise to pay for them; and certainly, none can be implied against parties, when, at the time the services were rendered, they were incapable of making an express contract.

The charges No. 83, 84, 85, 88, 90, amounting to $18,12 were for services in attending various meetings of the corporators, after the charter was granted, and previous to the organization of the company in the choice of directors. Those charges, we think, were properly allowed. The plaintiff with others and their successors were, by the charter, made a corporation, having the powers and privileges, and subject to the duties and liabilities contained in the general act of Massachusetts, relating to railroad corporations. Among other matters required by the charter, subscriptions

to the capital stock of the company to the amount of five thousand shares, were necessary before an organization could be perfected. The duty rested upon the corporators to do whatever was required by the charter to effect that result. It may be true that the company were not invested with full corporate powers until after the stock was subscribed, and their organization perfected in the choice of directors ; yet, the corporation was *in esse* before that event ; it had an inchoate existence, and the corporators had the power, and were so far the agents of the corporation as to bind them by any act which they were required to do, or which was necessary to perfect their organization under the charter. Upon that principle was decided the case of the *Vt. Central R. Co.* v. *Clayes,* 21 Vt. 30 The auditor has found that the services were necessary, and though no express promise has been made by the defendants to pay for them, we think, under the circumstances, one will be implied.

The charges Nos. 86, 87, 89, 91, 92, 93, 94, 1, 3, 5, and the charges for cash expenditures, Nos. 4, 6, 8, were also, we think, properly allowed. It appears from the report of the auditor that on the 21st of May, 1844, the *corporators* passed a vote that " all " *reasonable expenses* incurred in taking stock shall be audited and " allowed by this board." At the same time the plaintiff and one Everett were appointed a committee to obtain stock subscriptions at Boston. In pursuance of that vote stock subscriptions were procured, so that the company were organized on the 22d of November, 1844, and directors were chosen. On the 15th of January, 1845, a vote was passed by the directors, of which board the plaintiff was a member, " that a committee be appointed to obtain additional subscriptions to the stock of the corporation to an amount not exceeding $ 300.000, and to allow such compensation as the board shall deem proper,—provided that the compensation shall, in no case, exceed one per cent on the amount of the subscriptions so obtained." The charges above enumerated are for services rendered under those votes. The auditor has stated that the services were rendered, that the charges are reasonable in amount, and, the corporation having received the benefit of them, we think they are liable for the amount allowed. We are also satisfied that under the vote of May 21, 1844, the plaintiff's claim is not limited to cash expenditures merely, but that he is also entitled to a reasonable

compensation for his personal services. In the case, *Regina* v. *The Gov. & Guard. of the Poor of Kingston on Hull*, 20 Eng. L. & Eq. R. 149, the words "*expenses incurred*" were limited to cash expenditures. In that case the town clerks were directed by act of Parliament to prepare lists of persons entitled to vote for members of Parliament, and the *expenses incurred* were to be repaid. From the phraseology of the act, it was considered to be the intention to add to the official duty of the town clerks the performance of that duty without additional compensation, except for cash advances. That such additional duties may be imposed on public officers in that manner, was decided in that case, as also in the case of *Jones* v. *Mayor of Carmathan*, 8 Mes. & Wels. 605. But, we think, a different construction should be placed on this vote of the company. The plaintiff was not in the discharge of the duties of a public officer, neither was it competent for the board of corporators to impose on him the performance of those duties without compensation. The vote contains an express request for him to perform those services, and, we think, the intention was that he should be paid for them.

The charge No. 7, under date of February 24, 1845, for 18 days services at Boston, was allowed to the plaintiff; but we are unable to perceive any ground on which that allowance can be sustained. The vote of the corporators of May 21, 1844, was abrogated by the choice of directors, and by the vote of the directors of January 15, 1845. This vote of January 15 was rescinded on the 6th of February, 1845, when it was voted by the directors that "the vote passed January 15th, concerning obtaining subscriptions and paying a compensation therefor, be and hereby is rescinded." On the 13th of February, 1845, the stockholders voted, "that no bills for personal services and expenses for procuring subscriptions for stock be allowed to any person unless employed by the corporation, and that no compensation shall be allowed to the directors of the corporation for their services in that capacity." Independent of the vote of the stockholders on the 13th of February, concerning the effect of which we have no occasion to make any remarks, we think the plaintiff has no right to charge for his personal services, upon the strength of any of those former votes. For cash advances during the period the plaintiff was director, it appears

that no objections were made to their allowance, except the statute of limitations. To justify the allowance of this charge, therefore, it should appear that those services were rendered, and that the corporation, by some act, have recognized his employment for that purpose with the intention of making compensation. No such fact appears in the case. The plaintiff must have understood, after the votes of February 6th and 13th, that no compensation for personal services was to be made. As a general rule, directors are not entitled to compensation for their personal services as such, unless they were rendered under some express contract or vote of the company to that effect; Ang. & Ames on Cor. 255; *Dunstan* v. *Imperial Gas Co.*, 3 Barn. & Ad. 125. That charge, therefore, should have been disallowed, as were all the other charges for his personal services subsequent to the passage of the vote of February 13th, 1845. The reasons for the disallowance of one, exist for the disallowance of the others.

The defendants have interposed the statute of limitations to all the charges in the plaintiff's account previous to August 21, 1845. The writ in this case was issued August 21, 1851. On this question it is only necessary to observe, that the defendants are a foreign corporation, and first had known attachable property in this state, in the year 1847. Upon these facts the case falls within the exceptions of the statute. The Comp. Stat. 379, §14, provides that if a person shall be out of the state when a cause of action of a personal nature accrues against him, the action may be commenced within the time limited, after such person shall come within the state. If the cause of action has accrued, and the person leaves the state before the statute has run, and has no known attachable property within it, the time of his absence is not to be taken as a part of the time limited for the commencement of the action. Corporations are undoubtedly within the provisions of this act, and until the defendants had attachable property in this state, no suit could have been commenced by the plaintiff on this claim. There was no mode of service by which the corporation could have been made subject to the jurisdiction of the courts in this state, until the year 1847, which is less than six years previous to the commencement of this suit. The statute, p. 244 § 19, directing all writs against a corporation, to be served by leaving a copy with the clerk of the corporation,

or in his absence with some of its officers, and in their absence, with one of the stockholders, has reference exclusively to corporations within this state. The account, therefore, is unaffected by the statute of limitations. We perceive no error in the decision of the county court in this case, except in the allowance of the charge No. 7, under the date of February 24, 1845, which, we think, should have been disallowed.

The judgment of the county court must be reversed, and the amount of that charge with the interest thereon to September 21, 1854, must be deducted from the amount allowed by the auditor, and a judgment rendered for the plaintff for the balance.