## COUNTY OF ADDISON,

### AT THE

## JANUARY TERM, 1866.

---

### PRESENT.

Hon. LOYAL C. KELLOGG,  
Hon. WILLIAM C. WILSON,  } ASSISTANT JUDGES.  
Hon. BENJAMIN H. STEELE,  }

---

## JOSHUA WETHERBEE'S EXECUTORS v. JOSHUA WETHERBEE'S HEIRS.

### *Evidence. Experts. Wills.*

A consulting physician should not be permitted to state in evidence his opinion, when that opinion is predicated mainly upon statements of facts made to him by the attending physician, out of the patient's presence, for the purpose of a professional examination of the patient.

But, if the attending physician is himself a witness, or if the facts are testified to by others, the opinion of the consulting physician upon the hypothesis of the existence of such facts in addition to those within his own observation, is admissible.

Expert opinions are admissible if based upon a state of facts which the evidence on behalf of either party tends to establish. But the jury should know upon

what facts the opinion is founded, for its pertinence depends upon whether the jury find the facts on which it rests.

The representations made out of court by the attending physician to the consulting physician with relation to their patient's previous symptoms, are not competent testimony, if proven, to be weighed on the question of what the symptoms were.

An opinion, based mainly upon representations out of court, can be no more competent testimony than the representations. If the jury are not informed what the representations were they do not know upon what hypothesis of facts the opinion rests. If they *are* informed, they are still left with no evidence of the existence of the facts except unsworn declarations of a third person out of court, which are not proof in courts of law.

Such representations are not part of an act in issue, so as to be admissible as part of the *res gestae* upon the question of the existence of the symptoms. Nor can they be treated as made by the patient, nor are they receivable as made by an agent, nor will the death of the attending physician alter the rule of their competency.

It is not a rule productive of unusual hardship, which requires the attendants or some other persons to be called as witnesses, to prove the real existence of the state of facts upon which the physician predicates the opinion to which he testifies as an expert, when the case is not clear enough to enable the physician to form an opinion from the patient's complaints and such of the symptoms as have come under his own observation.

The issue on trial was upon the testamentary capacity of Joshua Wetherbee when he executed the will in question, April 8th, 1861. In the previous February the witness Thayer, a physician and expert, visited him professionally, and found him at that time diseased in body and mind, and mentally incapable of transacting business understandingly. The contestants claimed that the disease under which he was suffering, was a softening of the brain. To establish this they were permitted, against objection, to prove by the same witness, Thayer, his opinion to that effect, based, as he said, in part upon his own examination, but mainly upon what he was told on that occasion, for the purpose of that examination, out of the plaintiff's presence, of his previous symptoms and condition, by one Dr. Cram, who was the patient's attending physician during his whole sickness. It appeared that Dr. Cram deceased before the trial, and that Dr. Thayer's visit to the patient was at Dr. Cram's request and in his company. It did not appear that Dr. Thayer did or could form any opinion of the disease by examination alone, unaided by Dr. Cram's relation to him of the patient's previous symptoms and condition. Nor did it appear that Dr. Cram's relation was truthful and correct, nor that it corresponded with the state of facts which the testimony on either side tended to establish. *Held,* that the objection to Dr. Thayer's testimony of his opinion was well taken.

APPEAL from the decision of the probate court, allowing a written instrument as the last will of Joshua Wetherbee, deceased.

The defence insisted on under appropriate pleas, was: First, Want of testamentary capacity. Second, Weakness of intellect and undue influence.

The instrument in question was executed on the 8th April, 1861.

Dr. S. W. Thayer, a practicing physician, was introduced as a witness for the contestants, who testified in substance that in the latter part of February, 1861, he visited, professionally, the testator at the request of and in company with Dr. Cram, Sen., (since deceased,) who was and had been the testator's attending physician during his illness up to that time ; that he went into the room where the testator was and made such examination and .enquiries of the testator as he thought necessary ; that he spent but a few minutes in the room with him, and that Dr. Cram was not present at such examination. The witness described the condition in which he found the testator, both mentally and physically, and testified that he was not in a condition of mind at that time to transact business understandingly. He then stated that in his opinion the disease under which the testator was suffering was a softening of the brain ; (it being claimed on the part of the contestants that this disease caused incapacity ;) and stated that this opinion was founded on the examination he made and what he was told cn that occasion (not in the presence of the testator) by the attending physician, for the purpose of that examination, of the previous symptoms and condition of the patient, and mainly upon the latter. To this opinion the plaintiff objected. The court overruled the objection.

One Orvis, an unprofessional witness, called by the contestants, having testified to his long acquaintance with the deceased, and to having seen and conversed with him frequently during a period of three months prior to the execution of the instrument in question, as well as afterwards, was asked by the contestants if, in the opinion of the witness the deceased, in the months of March and April, 1861, had sufficient mental capacity to give, without prompting, a general statement or account of the property he was possessed of, which would be substantially correct. This witness was also asked by the contestants if, in his judgment the deceased had in March and April, 1861, when seen by the witness in those months, sufficient capacity to reason on ordinary topics. These questions were objected to by the proponent, but the court overruled the objection, and the witness answered both questions in the negative.

It having been claimed by the plaintiff and some evidence given

tending to show that the testator's reason for making the will in question was the death of his daughter in February, 1861. The contestants introduced evidence to show that the testator had for many years entertained and freely expressed the intention, to divide his property equally between his children, both in gifts during his life, and in final disposition; that he had uniformly acted on this intention in all gifts to his children; that he had made a will in 1855, and a subsequent codicil, which in connection with previous provisions effected an equal distribution.

Against the objection of the proponent this witness was also allowed to testify that for many years prior to the occurrence of the alleged mental incapacity of the testator, he had entertained, and, speaking of cases in which he was not concerned, expressed the opinion that in the disposition of property by will, a testator ought to give as much to orphan grand-children as he would have given to their parent if he had survived.

A witness introduced by the contestants having testified in his direct examination that on an occasion not far from the time of the execution of the instrument in question, the testator erroneously stated to him that the listers had " increased his (testator's) assessment one thousand dollars for money on hand and debts due," and that on that occasion he seemed excited, by reason of such increase of his list. The proponent on cross-examination asked the witness if it was not at the time referred to generally reported and understood in the neighborhood where the deceased lived, that his list had been so raised. To this question the contestant objected and the court refused to allow it to be answered.

The witness, Orvis, having testified in the course of his evidence that he was sent for, about the 9th of March, 1861, to come to the testator's house to watch with him, with a message that he had had another fit, and he went accordingly, and having described his condition, &c., the plaintiff introduced the evidence of the testator's wife that the testator had no such fit and that no such message was sent. In reply to this and after the plaintiff had closed his testimony, the contestants, for the purpose of showing the time the message came and not as to the truth of the message, offered the evidence of Mrs. Orvis that the message was brought to her husband on the

30

occasion stated by him, that the testator had had another fit, and desiring Mr. Orvis to go over and watch with him and that he went. That the message was brought by one Porter, and that she noted the fact and date in her diary, at the time. To the testimony of Mrs. Orvis the plaintiff objected, but it was admitted by the court.

To all which rulings and decisions of the court the proponent seasonably excepted. Verdict for the contestants.

*G. W. Grandey*, *E. R. Hard* and *Stewart & Foot*, for the plaintiffs.

The opinion of Dr. Thayer based mainly upon information *communicated to him by Dr. Cram*, was clearly inadmissible. Professional opinions are never admissible in evidence unless they are based upon actual personal observation, or are elicited by hypothetical enquiries based upon facts testified to by other witnesses.

To allow the introduction of an opinion founded upon what the witness has learned from others out of court, would be to allow the witness to exercise the functions both of court and jury—of the former to determine what testimony and facts are competent to be considered in arriving at the opinion, and of the latter in determining the weight of the evidence bearing upon the existence of those facts. It would moreover open the door to the grossest imposition and fraud, for which there could be no redress nor punishment.

That Thayer's opinion was not based *wholly* upon what Cram told him, but was slightly influenced by Thayer's own observation, does not affect the question. If the opinion was founded to *any* extent upon information derived from an improper source, it was legally unfounded, as much as if wholly based upon such information. These propositions are fully supported by the following authorities: *Heald* v. *Thing*, 45 Maine, 392; 9 Mass. 225; 7 Vt. 161; 33 Vt. 18; 35 Vt. 407 *et seq.;* 1 Greenl. Ev. s. 440.

*E. J. Phelps* and *G. F. Edmunds*, for the defendants.

1. Dr. Thayer's evidence was properly received. His opinion was founded upon his professional examination of the patient, in connection with the statement of symptoms given on that occasion, and for the purpose of that examination, by the physician in attendance; the patient being incapable of making a rational statement for himself.

Such opinions must, of necessity, be always largely based on the statement of symptoms made by the patient, or by some one for him, at the time of, and in connection with his personal examination by the physician. In case of internal disease, no opinion at all could usually be formed by a physician, without the aid of such a statement. It constitutes, therefore, part of the *res gestae,* and of the examination itself, and is not in the nature of hearsay. Had this statement been made by the patient himself, it will not be claimed that the opinion would not be admissible. Even in a case where the patient's capacity to state correctly was doubtful, or his interest to sustain a particular theory strong, these considerations would go only to the weight of the evidence. *Lament* v. *Vaughn,* 30 Vt. 95; *Lush* v. *Drew,* 4 Wend. 313.

Upon what conceivable principle or reason then, can the admissibility of a medical opinion be made to depend on the question, whether the examination on which it is founded was accompanied by the patient's own statement of his preceding symptoms, or by that made for him by his attendant? Surely the same obvious necessity that admits the opinion in the one case, must admit it in the other. The only diffe.'ence that can be suggested is, that the statement in the latter instance is likely to be the most accurate and impartial, and the opinion therefore the more valuable. Indeed, the statement of symptoms made under such circumstances by the attendant, was in effect that of the patient himself. The case shows that Dr. Cram was the regular physician in charge of the testator, and acted for him in obtaining the attendance, examination and opinion of Dr. Thayer. To exclude this evidence would necessarily result in excluding all medical opinion as to the existence or nature of an internal disease, where the patient is from any cause unable to relate his own symptoms to the physician. And as no evidence on that subject, except medical opinion *can* be given, the fact could not be proved at all.

The opinion of the court was delivered by

STEELE, J. The issue on the trial below was upon the testamentary capacity of Joshua Wetherbee, when he executed the will in question, April 8th, 1861. In the previous February the witness, Thayer, a physician and expert, visited him professionally and found

him at that time diseased in body and mind and mentally incapable of transacting business understandingly. How far his condition on the last of February would tend to prove his condition on the 8th of April, would depend very much upon the nature of his disease. The contestants claimed that the disease under which he was suffering, was a softening of the brain. To establish this they were permitted, against objection, to prove by the same witness, Thayer, his opinion to that effect, based, as he said, in part upon his own examination, but mainly upon what he was told on that occasion, for the purpose of that examination, out of the patients presence, of his previous symptoms and condition by one Dr. Cram, who was the patient's attending physician during his whole illness. It appeared that Dr. Cram deceased before the trial, and that Dr. Thayer's visit to the patient was at Dr. Cram's request and in his company.

It does not appear from the case before us that Dr. Thayer did or could form any opinion of the disease by examination alone, unaided by Dr. Cram's relation to him of the patient's previous symptoms and condition, nor does it appear that Dr. Cram's relation was truthful and correct, nor that it corresponded with the state of facts which the testimony on either side tended to establish.

The question before us is whether the objection to Dr. Thayer's testimony of his opinion was well taken.

I. Experts are permitted to state in their testimony their opinions derived from a state of facts which the evidence on behalf of either party tends to prove. That evidence may be from the expert himself if he has personal knowledge of the facts, it may be from others who have such knowledge, or it may be in part from both. In any case the jury ought to know upon what basis of facts the opinion is founded, for its pertinence depends upon whether they find the facts upon which it rests. In *Dickinson* v. *Barber*, 9 Mass., 227, the court in rejecting depositions in which opinions were stated without the facts upon which they were formed, use this language : " the opinions of professional gentlemen are not to be received as evidence unless predicated upon facts testified either by them or others." The propriety of this rule would be instantly appreciated if a foreign lawyer, in a case where he would be an expert, should offer to testify that, from what he had seen and heard of the controversy, he was of opinion the de-

fendant was liable. This might do, if the facts were agreed upon, and the only controversy was upon their legal effect—but the facts, which form the basis of an expert opinion, must, unless conceded, be proven.

If we should admit that the repetition of Dr. Cram's declarations by Thayer would not be evidence to prove the truth of the facts out of which Thayer's opinion was made up, it would not matter whether they were repeated or not, for, in either case, the opinion would be without a basis in testimony, and would be inadmissible.

If the contestants had introduced testimony, which tended to prove such symptoms as Cram related, it would have been easy to inquire of the witness his opinion of the disease, if, in addition to what he saw himself, it had previously developed such symptoms.

*With* such testimony Dr. Cram's declarations (still admitting them to be not evidence) would be objectionable because likely, though not legitimate proof, to be considered by the jury in deciding the question of the existence of such symptoms. *Without* such testimony the opinion would rest upon facts not in proof and beyond the power of the jury to find, and therefore would not be pertinent to the case.

II. The question then reduces itself to this: Were the declarations of Dr. Cram, if proven, competent testimony to be weighed on the question of what the patient's previous symptoms were? The general rule is that the declarations of third persons out of court, made without the restraint of an oath and without the criticism of a cross-examination, are inadmissible. Do the circumstances of these declarations make them an exception?

1. The decease of Dr. Cram cannot make them exceptional. They were not dying declarations, nor given as testimony at a former trial. It is the ordinary case of the death of a witness. His decease makes it more desirable to the party to use his declarations, but does not alter the rule of their admissibility.

2. His professional character cannot make them exceptional. It may add to their reliability, but cannot make them evidence without the usual guards of proof in courts of law.

3. No such agency existed as would make them exceptional. The relation of patient and medical attendant does not of itself con-

stitute the physician an agent to bind the patient by what he says to another physician of his patient's feelings and symptoms. That doctrine of the law of contracts which permits proof of the admissions of agents under certain circumstances does not apply to a matter of this nature.

4. No reason exists *ab inconvenienti* why courts should make this class of declarations exceptional. The death of a witness is always liable to create hardship, but in such a case as this it would seem very probable that the actual condition and symptoms could be shown by others, and Dr. Thayer's opinion predicated upon such proof and what he saw himself could be obtained. Such testimony would come within the rule of *Fairchild et al.* v. *Bascomb, et al.*, 35 Vt., 400. The consulting physician usually and properly obtains information from the patient's attendants, but unless the case is clear enough, or he remains long enough to enable him from what he sees himself, together with what he learns from the patient, to form an opinion, it is no extraordinary rule, productive of unusual inconvenience, that requires the attendants or some other persons to be called as witnesses to prove the real existence of the state of facts upon which the physician proposes to testify as an expert.

5. It is claimed that the reasoning which allows as evidence the patient's complaints and declarations, made at the time of suffering and of submission to the treatment of his physician, applies as well to the report of them which the attending physician gives the consulting physician; and that this report, made out of the patient's presence, may be proven as part of the *res gestae*; or, in other words, that, if when the patient's symptoms and condition are in issue, we ought to consider what the patient said and how he acted, we should by parity of reasoning consider upon the same issue what his physician said and how he acted in consulting another physician. What one says in acting, as in paying money, delivering goods or striking a blow, accompanying, explaining and characterizing the act, may, within proper limits, be proven when the act is in issue. The meaning of the act is drawn from the words. It is a verbal act. The party may prove his own act and his words which are a constitutive part of it. Such words are called a part of the *res gestae*. Akin to this rule is that which permits one whose sensations are in issue to

prove under certain restrictions what he said at the time. This doctrine is founded upon the fact that, in the nature of things, this is the best and often the only proof of which the case admits. It is chiefly upon the *latter* principle that the patient's statements are held competent proof of his sensations and condition. Dr. Cram's declarations, out of court, would clearly be irregular if considered merely as a repetition of these statements. But, conceding the patient's declarations to be admissible, upon the *former* principle, still the declarations of Dr. Cram would stand upon a ground quite distinguishable, from them, both as to means of knowledge and inducement to truthfulness. The patient knows his sensations, and he only ; he understands that his life and health depend on the correctness of his report of them to his physician and attendants. No one testifies that Dr. Cram repeats them correctly. Indeed, the main effort of the physician might be to so state the case in the patient's absence as to justify his past treatment of it, to the consulting physician.

Nor can the fact that the words accompanied the act of consultation make them a part of the *res gestae.* The consultations between the physicians is not the thing in issue. The information there given does not bear that close relation to the principal act or thing in dispute, which is necessary in order to make it a part of that act or thing. It is mere declaration. Dr. Thayer's testimony of it, or of an opinion mainly made up of it, was testimony of hearsay, and should not have been received.

In *Heald* v. *Thing*, 45 Me. 392, an offer to prove the declarations of the patient's attendants to the physician called as counsel, was refused, and such testimony and expert opinions predicated upon such declarations were held by the entire court to be inadmissible.

We have not thought it important to discuss the other questions. Some of them were abandoned by the excepting party, and in none of them, after giving the bill of exceptions a fair and reasonable construction, do we find any error. The objection to Dr. Thayer's testimony being in our opinion well taken, the judgment of the county court is reversed, and the case is remanded for a new trial.