JOHN STANTON AND WIFE *v.* THE PROPRIETORS OF HAVERHILL BRIDGE.*

*Effect of Appearance and general Continuance as Waiver of Dilatory Pleas and Objections to Service of Writ. Liability of Foreign Toll-Bridge Corporation for Injuries Received on its Bridge in this State. Amendment. Evidence.*

The appearance of a foreign corporation by counsel at the first term, and suffering a general continuance at that and the next term, is a waiver of all dilatory pleas, and of all objection to the service of the writ.

A foreign bridge corporation which demands and receives tolls of travellers, is bound to keep that portion of its bridge and approaches within this state, in safe condition for travel, and cannot excuse itself by impeaching its own title to maintain the same.

The defendant was sued by the name of " The Haverhill Bridge Company." Its corporate name was, "The Proprietors of Haverhill Bridge." The court allowed the plaintiffs to amend their writ and declaration by inserting the defendants' corporate name. *Held,* that the court had power to allow the amendment.

A witness having testified that he could not describe the defendant's bridge at the time of the accident in question, was asked to compare its then condition with its condition three years afterwards, but was not permitted to answer the question. *Held,* no error.

CASE for injury to the wife, occasioned by reason of the insufficiency and want of repair of the defendant's toll-bridge across the

*This case was decided at the General term in October, 1873. See a learned note on the case in 14 Am. Law Reg. (N. S.) 469.

Connecticut River, from Haverhill, in the state of New Hampshire, to Newbury, in this state.

The writ was returnable to the June term, 1871, Orange county, when the suit was entered, the defendant appeared by attorney, and obtained a rule for bail, and the case was continued under the rules of court. The case was also continued at the next term ; and at the June term, 1872, PECK, J., presiding, the defendant pleaded to the jurisdiction, that the defendant had an existence only as a corporation under and by virtue of an act of incorporation and charter granted by the legislature of New Hampshire ; that its officers were elected and held office under and by virtue of said act and the laws of New Hampshire, to wit, at Haverhill, and not otherwise or elsewhere ; that its franchise, bridge property, place of business, and collection of tolls, were without the state of Vermont, to wit, at said Haverhill, and not elsewhere ; that said bridge was built, maintained, and supported under and by virtue of said act, and within the place specified and limited therein, to wit, at said Haverhill ; and that the defendant transacted no business within the state of Vermont.

The plaintiffs replied, that the defendant was seised and possessed of land in said Newbury, on which the west abutment of its bridge stood, along and over which passage was necessarily made in crossing said bridge, and that the injury complained of was occasioned by reason of the insufficiency of that part of said bridge which was over and upon the land in said Newbury, and within this state ; and that one Tappan Stevens was, during all said time when, &c., the duly elected and qualified clerk of the defendant, and resided in said Newbury. The writ was served upon the defendant by delivering a copy to said Stevens in this state. The defendant filed a general demurrer to the replication, which the court overruled, and adjudged the replication sufficient ; to which the defendant excepted.

At a subsequent term, PECK, J., presiding, the case was tried by jury, on the general issue. The plaintiffs offered in evidence exemplified copies of the defendants' act of incorporation, approved June 18, 1795, and of an act in amendment thereof, approved July 1, 1834, to prove that the defendant had a right.

to take toll, and that its bridge was a toll-bridge. Said act of incorporation provided that the defendant should sue and be sued by the name of "The Proprietors of Haverhill Bridge;" and the act in amendment thereof was an act in relation to "The Proprietors of Haverhill Bridge." The defendant was sued by the name of "The Haverhill Bridge Company." The defendant objected to the introduction of said copies, on the ground of a variance in the name of the defendant, whereupon the plaintiff moved to amend the writ and declaration, by making the name of the defendant correspond with the name given in said acts, which the court allowed; to which the defendant excepted.

During the trial, the defendant proposed to show by one Goodwin, a witness on its behalf, that the bridge was in the same condition in December, 1872, at the point complained of by the plaintiffs, that it was in at the time the accident occurred, December 11, 1869, with the intention of showing its present condition by other witnesses, and propounded to said Goodwin the following question: "What was the condition of the bridge at the point where the accident happened at the time of the accident, as compared with what it was at the last time you was over it?" The witness had already testified that he was over the bridge last, on the second Friday of December, 1872, and he had already been inquired of by defendant's counsel, what the condition of the bridge was at the time of the accident, and was asked to describe it, but could not, and did not describe its condition. To this question the plaintiffs objected, and the court sustained the objection, and did not permit the witness to answer the question; to which the defendant excepted.

The defendant requested the court to charge that if the jury found that the insufficiency which caused the injury complained of, was off the bridge, and west of the west end of the planking thereof, the plaintiffs could not recover, as that was within the surveyed limits of the highway in the town of Newbury, and in the state of Vermont. But the court refused to so charge; but ruled upon the question as to how far the defendant's duty and liability extended, and charged that the space that it was the duty of the defendant to keep and maintain in good and

sufficient repair, extended westwardly as far as the westerly edge of the slanting planking, both as to the condition of the timbers and planking and as to the earth covering those planks, so far as necessary to keep it in good and sufficient repair for the reasonable safety of travel; and that defendant was liable for any special damage to a traveller occasioned by an insufficiency or want of repair there, the same as upon the main bridge.

To the refusal to charge as requested, and to the charge as given, the defendant excepted. The other facts sufficiently appear in the opinion.

*Leslie & Rogers* and *Hebards,* for the defendant, upon the question of jurisdiction, cited *Skinner et al.* v. *McDaniels,* 4 Vt. 418; *Beach* v. *Abbott,* 6 Vt. 643; *Wright* v. *Boynton et al.* 37 N. H. 9; *March* v. *Eastern R. R. Co.* 40 N. H. 548; *State* v. *Boston, Concord & Montreal R. R. Co.* 25 Vt. 433; *Day* v. *Essex Co. Bank,* 13 Vt. 97; *Jennison et al.* v. *Hapgood,* 2 Aik. 31; *Forbes et al.* v. *Davidson,* 11 Vt. 660; *University of Vt.* v. *Joslyn,* 21 Vt. 52; *Huntley* v. *Henry et al.* 37 Vt. 165; 1 Chit. Pl. 425; *King* v. *Johnson,* 6 East. 583; *Parker* v. *Elding,* 1 East. 352; *Taylor* v. *Blair,* 3 Term, 452; *Newcomb* v. *Parker,* 35 Vt. 302; *Proprietors of Claremont Bridge* v. *Royce,* 42 Vt. 730; *Hall* v. *Vt. & Mass. R. R. Co.* 28 Vt. 401; *Eaton* v. *Houghton,* 1 Aik. 380; *Gilman* v. *Thompson,* 11 Vt. 643; *Bushnell* v. *Jamaica,* 15 Vt. 438; *Kittridge* v. *Emerson,* 15 N. H. 227; *Peckham* v. *Haverhill,* 16 Pick. 274; *Bank of Augusta* v. *Earle,* 13 Pet. 587; *Clark* v. *N. J. Steam Navigation Co.* 1 Story C. C. 501; 2 Kent Com. 330, n. Upon the question raised by the charge and the refusal to charge, they cited, Gen. Sts. ch. 28, §41; *Baxter* v. *Winooski Turnpike Co.* 22 Vt. 114; *Willard* v. *Newbury,* 22 Vt. 458; *Newbury* v. *Conn. & Pass. Rivers R. R. Co.* 25 Vt. 377.

*Orin Gambell Jr.* and *C. W. Clarke,* for the plaintiffs, upon the first question, cited Gen. Sts. ch. 30, § 41; *Hoxie* v. *Wright,* 2 Vt. 263; *Claremont Bank* v. *Wood,* 10 Vt. 582; *North Bank* v. *Wood et als.* 11 Vt. 194; *Day* v. *Essex Co. Bank,* 13 Vt. 97;

*Grafton Co. Bank* v. *Doe,* 19 Vt. 463 ; *Bowman* v. *Stowell et al.* 21 Vt. 309 ; *Winn* v. *Averill,* 24 Vt. 283 ; *State* v. *Boston, Concord & Montreal R. R. Co.* 25 Vt. 433, 443 ; *Davis* v. *Lamoille Co. Plank Road Co.* 27 Vt. 602 ; *Hall* v. *Vt. & Mass. R. R. Co.* 28 Vt. 409 ; *Huntley* v. *Henry,* 37 Vt. 168 ; *Lewis & Co.* v. *Locke,* 41 Vt. 11 ; *Proprietors Claremont Bridge* v. *Royce,* 42 Vt. 730 ; *Sibley* v. *Hodgdon,* 9 N. H. 394 ; *State* v. *Richardson,* 6 Foster, 232 ; *March* v. *Eastern R. R. Co.* 40 N. H. 577 ; *Robinson* v. *Mead,* 7 Mass. 353 ; *Gleason* v. *Dodd,* 4 Met. 333 ; *McQueen* v. *Middletown Manufacturing Co.* 16 Johns. 5 ; *Starback* v. *Manny,* 5 Wend. 148 ; *Shumway* v. *Stillman,* 6 Wend. 447 ; *St. Louis Ins. Co.* v. *Cohen,* 9 Mo. 422 ; *Mahew* v. *Thacher,* 6 Wheat. 129 ; 1 Kent Com. 261, and note c. : 1 Chit. Pl. 426 *et seq. ;* Angell & Ames Corp. §§ 404, 405, 647, 648, 650, 651 ; Abbott Corp. 822 ; Graham's Pract. 194. Upon the other question, they cited *Bardwell* v. *Jamaica,* 15 Vt. 442 ; *Matthews* v. *Winooski Plank Road Co.* 24 Vt. 480 ; *State* v. *B. C. & M. R. R. supra; Davis* v *Lamoille Co. Plank Road Co. supra; Bagley* v. *Ludlow,* 41 Vt. 425 ; *Whitney* v. *Essex,* 42 Vt. 520 ; Graham's Pract. 62, and cases cited.

The opinion of the court was delivered by

REDFIELD, J. I. However defective was the service of this process, we think the appearance of the defendant by counsel, at the first term the cause was entered in court, and suffering a general continuance for that and the succeeding term, is a waiver of all dilatory pleas, and of all objection to the service of the writ. *State* v. *Richmond,* 6 Foster (N. H.), 232 ; *Huntly* v. *Henry et al.* 37 Vt. 165.

The defendant's plea does not aver or claim, that the writ was not properly served, but that the defendant being a foreign corporation, existing and doing business under the laws of New Hampshire, and having no franchise, business, or property in this state, the courts could not take or have jurisdiction of the person of the defendant, or the subject-matter of this suit. The replication avers that the defendant is the owner of land in this state, on which the western abutment of the defendant's bridge stands ;

and the injuries complained of, occurred by reason of insufficiencies in that part of defendant's bridge situate on said land in this state. Whether the facts averred in the replication are essential to the exercise of jurisdiction by the courts of this state, is not material, as we think the replication is quite sufficient for the plea. It has often been held that the courts of this state may take jurisdiction of foreign corporations, when properly impleaded in such court. *Day* v. *Essex Co. Bank,* 13 Vt. 97 ; *Hall* v. *Vt. & Mass. R. R. Co.* 28 Vt. 409 ; *March* v. *Eastern R. R. Co.* 40 ·. H. 557. The latter case shows a thorough examination, and is a very satisfactory statement, of the law. A voluntary and general appearance in an action, not only gives jurisdiction to the court, of the parties, but cures any defect or irregularity in the service of the process. *Huntly* v. *Henry, supra.* In *State* v. *Richardson,* BELL, J., says : " The party who had not been duly summoned, is always and everywhere, understood to waive his exceptions, if he appear and suffer a general continuance on plea in bar, or in any way submits his case to the judgment of the court, without at once making his objection at the earliest opportunity." See also *Carpenter* v. *Minturn,* 65 Barb. (N. Y.) We think the court had jurisdiction of the defendant and subject-matter of the suit.

II. We think it not doubtful that the court had the power to allow the amendment of the plaintiff's declaration, as was done ; and no exception lies to the manner its discretion was exercised. Gen. Sts. 267, § 41. *Montgomery* v. *Maynard,* 33 Vt. 454 ; *Willis* v. *Averill,* 24 Vt. 283.

III. The testimony of Goodwin was properly excluded. Having testified that he could not describe the condition of the bridge at the time of the injury, it is evident he could not compare that state with its condition *three years afterwards.* How far a witness, without knowledge of the essential facts, shall be permitted to speculate in conjectural comparison, is, mainly, within the discretion of the court. The witness, possessing no means, could probably shed no light ; and in excluding his testimony we discover no error.

IV. The more important inquiry relates to the liability of the defendant for damages occasioned by the insufficiency of the road, or bridge, at the place of injury. This defendant had its artificial being by an act of the legislature of New Hampshire, and could not, strictly, have corporate being outside the jurisdiction of that state. Its strict *corporate* functions exist and are to be exercised there. But " there seems no question but a corporation may act by its directors, agents, and servants, beyond the limits of the sovereignty that created it." 1 Redf. Railw. 57. If the liability of the defendant were limited by the western boundary of the state of New Hampshire, then, a traveller who had paid his toll, and thereby obtained the guaranty of the corporation for safe passport across its bridge, would be without remedy for injuries received by reason of the insufficient repair of the western end of the main bridge, because the *place of injury* was outside the jurisdiction of New Hampshire, and within that of Vermont. And that would relieve the defendant from the duties imposed by contract with the traveller, implied by taking toll ; because it occupies, and cannot discharge its functions without occupying, a portion of the soil of Vermont. The defendant has constructed its bridge, in part, within the jurisdiction of this state, and used it for toll-paying travellers for near forty years, without challenge from any source, and with the implied assent of the sovereign authority of this state. As between the corporation and the traveller, it is not important whether the former had the legal title to the land, and lawful right to construct the bridge, as it has done. It must perform its *contract* with the traveller, who has paid his toll for the guaranty of safe passage across the river upon defendant's bridge.

The Boston, Concord & Montreal R. R. Co. was created by act of the legislature of New Hampshire, yet that corporation has extended its railway some one hundred rods into this state, without chartered right, and has carried passengers and freight over that portion of its railway for some twenty years. Although this state has the sovereign right to prevent that corporation from operating its railway within this state, yet reason, justice, and all analogy, would require that such corporation should, like other

persons, perform the duties which it assumes. In *McCluer* v. *Manchester & Lawrence R. R. Co.* 13 Grey, 124, the defendant corporation, created by act of the legislature of New Hampshire, received goods to carry from some point in Massachusetts to Manchester, N. H., and the goods were lost in Massachusetts by negligence of the carriers. The defendant alleged in defence, that it had no legal capacity to *contract*, or to become responsible, as carriers, without the limits of New Hampshire. The court, HOAR, J., held otherwise, and said : " They were in actual possession and *use* of the road, without obstruction from the Commonwealth, and they received the plaintiff's property, and agreed that it should be safely kept, and transported to its destination. It is no answer to a breach of that agreement to deny the *validity* of their own contract." So this defendant, for a consideration, agreed to give safe passage to the plaintiff, across Connecticut River, upon its bridge ; and if the plaintiff was injured by the actionable negligence of the defendant in maintaining its structure for such safe passage, we see no good reason in law or morals, why defendant should not be responsible, though the *locus in quo* may be in Vermont.

V. It is further insisted that the injury occurred not only without the jurisdictional limits of New Hampshire, but in and upon the highway legally established by authority of this state in the town of Newbury. After the bridge was built in 1834, the highway was laid and established to the west end of the bridge, described in the survey as follows : " Beginning at the westerly end of the planking on the main bridge over Connecticut River, (it being understood and agreed that the proprietors of said bridge always keep in repair the wharfing by them made.)" From the main timbers resting on the abutment of the bridge, was an inclined platform, made fast by spikes to the main structure, about four feet wide ; the roof of the bridge extended over it ; it was constructed as a part of the original structure in 1834, and has been maintained by the defendant for the use of toll-paying travellers ever since ; and without this or some similar provision, it is evident that travellers could not pass and repass with facility or safety ; the bridge was imperfect without it. This bridge

having been constructed with this inclined platform as a part of the structure, and having been used by defendant for near forty years as *the* means of transit from the highways of New Hampshire to those of Vermont, it would be no unnatural use of language, to limit the highway to the western line of this inclined platform. But if conceded that the highway was established to the planks of the main bridge, and that such inclined platform was on or over the highway as established by law in this state, it would be no obstacle to the plaintiffs' right of recovery. As between the defendant and the town of Newbury, the former had assumed to maintain and keep in repair the whole wharfing at the western abutment of the bridge, extending a rod or more west of the inclined platform where plaintiff was injured. The defendant had used this apron of its bridge for forty years, as a part of the apparatus for the safe passage of travellers, and claimed and received pay for its use. The traveller who has paid toll, has defendant's *contract* that its apparatus for crossing the river is in safe condition. The defendant is required to do what it has, for consideration, promised to do, and what it has exercised the right to do for so long a time that prescription has put to rest all question of the right, unless the sovereign state should interfere. To allow the defendant to allege in excuse its *incapacity* to make the contract, would be, as Judge HOAR well says in 13 Gray, *supra*, "like an inn-keeper sued for lost luggage, alleging in defense, that his landlord was without legal title, and therefore he was keeping inn without legal right." In *Davis* v. *Lamoille Plank Road Co.*, it appeared that the defendant had occupied in constructing the plank road, the established highway in the town of Stowe; and by contract between said town and the plank road company, the latter had assumed to keep the road in safe condition, and protect the town from damages for an insufficient *road*. The corporation defended on the ground that the town was alone liable. The court, REDFIELD, Ch. J., say: "If it could be maintained (which we think it could not) that the town of Stowe was liable for giving up its highway before the defendant had built a proper plank road, it would not excuse the defendant after opening their road and taking toll."

The duty of maintaining the bridge in such condition as to assure reasonable safety to travellers, does not arise from the provision of the charter; but, as the same learned judge says in the last case, "The liability to pay tolls is a consideration for the undertaking on the part of the corporation to furnish a safe road for the use of the traveller as an equivalent. It is the same in principle as any other *contract* where service is performed for pay. There is an implied undertaking, resulting from the law applicable to such subjects, that the person undertaking such service, whether it be a natural or artificial person, shall perform it faithfully."

An eminent public man in this state, now deceased, as town auditor, rejected the claim of the overseer of the poor for the burial of a town pauper, on the ground that the statute provided only for the *support* and not the *burial* of the poor; for the *living* and not the *dead*. There could be no exception to his logic; but when practically applied to the service required and the duties enjoined, its *good sense* is less conspicuous.

The corporation was authorized by its charter to build a bridge, and nothing more; but when it is considered that the end and purpose of the grant was, to afford a safe transit for teams and travellers from the highways of New Hampshire to and upon the highways of this state, and that the defendant constructed this appendage under the roof of the bridge, and made it fast to the main structure, and maintained and used it and invited travel over it for pay, and that for forty years, as a *means of transit* from New Hampshire to the highways of this state, as against the toll-paying traveller the defendant should be held responsible for the reasonable safety of the means provided for such passage.

We find no error, and the judgment of the county court is affirmed.

PIERPOINT, Ch. J., and BARRETT, J., dissented upon the fourth and fifth points in the opinion,