## FLANAGAN *v.* THE STATE.

106 109
f113 439
106 109
h120 94
106 109
127 400

1. It was, in a trial for murder in which the sole defense was that the accused was insane at the time of the homicide, improper and illegal to allow the following question to be propounded to an expert witness, the answer thereto being in the negative: "State whether, in your opinion, from your examination of [the accused], from all that you know of him, have observed of him or heard of him, he was laboring, at the time this crime was committed, under any overmastering delusion."

2. A new trial is granted in the present case, not only because of the error indicated, but also because the record discloses grave reason for fearing that one of the jurors was not impartial, and also because it appears that the leading counsel for the accused was so ill before the trial concluded that he was not in a proper physical condition to give to the case that degree of care and attention which its importance required.

3. The numerous grounds of the motion for a new trial not referred to in the preceding notes do not present any question which it is essential to decide at this time.

Argued October 6, — Decided December 13, 1898.

Indictment for murder. Before Judge Candler. DeKalb superior court. June 29, 1898. ˎ

˙ *Glenn & Rountree* and *G. C. Spence,* for plaintiff in error.

*J. M. Terrell, attorney-general, W. T. Kimsey, solicitor-general,* and *W. W. Braswell,* contra.

SIMMONS, C. J. Flanagan was indicted for murder, and defended on the ground of insanity. The jury returned a verdict of guilty, but a new trial was granted. *Flanagan* v. *State,* 103 *Ga.* 620. Upon his˙second trial, the accused was again convicted without recommendation. His motion for a new trial was overruled, and he excepted.

1. The following question was propounded by the State's counsel to one of the expert witnesses. introduced by the State : "State whether, in your opinion, from your examination of [the defendant], from all that you know of him, have observed of him or heard of him, he was laboring, at the time this crime was committed, under any overmastering delusion." To this question the witness was allowed, over the objections of the defendant's counsel, to give a negative answer, the objections made to the question being that it was "not in proper shape," was "not a proper question for the witness to form an opinion on," and was "not a proper hypothetical question." ˙ To this ruling exception was taken. An expert on insanity, as was the witness of whose evidence complaint is here made, may give an opinion based upon his own examination of a person, upon his observation of that person, or upon any state of facts, supported by some evidence in the case, which he assumes as true. The jury should be informed whether he bases his opinion on his own knowledge or upon a hypothetical state of facts, and should know. what portion of the evidence he has assumed to be true in forming his opinion. In the present case the witness gave an opinion which may have been based, in whole or in part, upon *what he had heard* of the defendant; and we think

it should not have been received. Suppose another expert witness had testified that from what *he* had heard, the homicide *was* committed under an overmastering delusion; how could the jury have possibly derived any assistance from this evidence? The two experts might have testified thus contradictorily, and yet been each correct because of their having heard very different things of the defendant; and the jury would have been unable to form any conclusion as to the truth of the facts upon which either opinion was based. "It has never been held that a medical expert has the right to give in evidence an opinion based on information which he has derived from private conversations with third parties." Rogers, Expert Test. § 46; Louisville etc. Ry. Co. *v.* Shires, 108 Ill. 617, 630. "Expert opinions are admissible if based upon a state of facts which the evidence on behalf of either party tends to establish. But the jury should know upon what facts the opinion is founded, for its pertinence depends upon whether the jury find the facts on which it rests. . . . An opinion, based mainly upon representations out of court, can be no more competent testimony than the representations. If the jury are not informed what the representations were, they do not know upon what hypothesis of facts the opinion rests. If they *are* informed, they are still left with no evidence of the existence of the facts, except unsworn declarations of a third person out of court, which are not proof in courts of law." Wetherbee's Ex'rs *v.* Wetherbee's Heirs, 38 Vt. 454. See also Heald *v.* Thing, 45 Me. 392; Hunt *v.* State, 9 Tex. Ct. App. 166; Polk *v.* State, 36 Ark. 124; Hurst *v.* R. Co., 49 Ia. 76; Lawson, Exp. & Op. Evid. 144 et seq. "Medical men are permitted to give their opinion as to the sane or insane state of a person's mind, not on their own observations only, but on the case itself, as proved by other witnesses on the trial. And while it is improper to ask an expert what is his opinion upon the case on trial, he may be asked his opinion upon a similar case hypothetically stated." *Choice* v. *State*, 31 *Ga.* 468. In the present case the expert witness testified as to his opinion based, to how great an extent does not appear, upon what he had heard. The jury had no possible means of knowing whether his opinion

was not based upon an assumption of the truth of rumors or reports which the jury did not believe to be true or of whose truth there had been submitted to them absolutely no evidence. It is therefore clear that the question was improper, because it allowed an opinion based upon what the witness had heard of the accused, and that the evidence was inadmissible.

Nor was the evidence otherwise unobjectionable. It was not competent for the expert to give in evidence an opinion based upon what he knew of the accused, without stating what he knew of him. The opinion may have been based upon facts known to the witness but altogether unknown to the jury; or the jury, had they known such facts, might have attached to them so little importance as to disregard an opinion known to be based upon them, and to lose faith in an expert who regarded them as sufficient foundation for a positive opinion as to such a weighty matter. As was said in the case of Burns *v.* Barren field, 84 Ind. 43, 48, "It is the clear right and duty of the jury to judge of the truth of the facts upon which the opinion of the expert is based. If his opinion is based upon what he may suppose he knows about the case, upon facts, it may be, altogether irrelevant and unknown to the jury, it would be impos sible for them to pass upon the truth of the facts upon which the opinion may be based, or to apply the opinion of the expert to the facts. Neither court nor jury can know the facts upon which the opinion rests. It is obvious that where the expert delivers his opinion from what he supposes he knows about the case, he must assume and exercise both the functions of the court and the jury — he determines that what he knows is both relevant and true. The relevancy of the facts must be determined by the court, their truth by the jury. The witness can not pass upon such questions." See also Louisville etc. R. Co. *v.* Falvey, 104 Ind. 409; Van Deusen v. Newcomer, 40 Mich. 90, 119, 120.

In addition to these objections, the question was "not in proper shape," and was certainly "not a proper hypothetical question." Where the question at issue is one of opinion merely, as that of sanity or insanity, a witness who has "knowledge of the facts and their surroundings," "may give his opinion by showing the reason for it, whether he be an expert or not." *Killian* v.

*Augusta & K. R. Co.*, 78 *Ga.* 749; Civil Code, § 5285. When, however, an expert is asked to give an opinion on facts not coming within his own knowledge, the question should be hypothetical. *Southern Bell Tel. Co.* v. *Jordan*, 87 *Ga.* 69. "A scientific expert, who has observed none of the facts for himself, should give his opinion on a hypothetical case similar to that before the jury, and not on the actual case as if he were a juror instead of a witness." *Griggs* v. *State*, 59 *Ga.* 738; *Choice* v. *State*, supra. In the present case the question was not hypothetical, and yet was so framed as to allow the witness to give an opinion on facts unknown to him but testified to or stated by others. Not only was his opinion asked directly as to the case, but it was asked as to the controlling, and indeed the only issue in the case. The defense relied upon was that of delusional insanity, and it was contended that at the time of committing the homicide the accused was acting under such a delusion, brought about by mental disease, that his will was overmastered. The testimony of this expert, that the accused was *not* "laboring, at the time this crime was committed, under any overmastering delusion," was, therefore, tantamount to the expression of an opinion that the accused was guilty of murder. "Questions should be so framed as not to call on the witness for a critical review of the testimony given by the other witnesses, compelling the expert to draw inferences or conclusions of fact from the testimony, or to pass on the credibility of the witnesses, the general rule being that an expert should not be asked a question in such a manner as to cover the very question to be submitted to the jury. As expressed in one of the opinions, 'a question should not be so framed as to permit the witness to roam through the evidence for himself, and gather the facts as he may consider them to be proved, and then state his conclusions concerning them.' " Rogers, Exp. Test. § 26, and cases cited. And in State *v.* Felter, 25 Ia. 67, 74, the following question was said to be improper, for the reason that it "practically [put] the medical witness in the place of the jury": "From the facts and circumstances stated by previous witnesses, and from those testified to by still other witnesses, relating to the homicide, and from defendant's conduct on the trial, is it

your opinion that the defendant was sane or insane when he committed the act?" See Rogers, Exp. Test., supra.

For the reasons above given, we think the evidence was manifestly inadmissible, and that the court erred in overruling the objections made to the question. Nor can the error be treated as one of little importance. There was evidence in the case which would have supported a finding that the will of the accused, in consequence of a delusion brought about by mental disease, was overmastered so that there was no criminal intent as to the act in question, and that this act was connected with the peculiar delusion under which the accused was laboring. Where such evidence was before the jury, who can say whether their finding to the contrary was or was not brought about by this illegal evidence? This court can not do so. This testimony was given by the principal expert witness for the State and went directly to the very subject which the jury had to decide, and we can not say that their finding may not have been based upon such testimony, or that it may not have served to remove from their minds a reasonable doubt which would otherwise have existed there, as to the sanity of the accused.

2. We think we have demonstrated that it was reversible error to allow the question and answer of the expert witness alluded to above. That error was in itself sufficient to require the grant of a new trial, but there were other errors complained of, which, taken in connection with that heretofore discussed, make us the more certain that the ends of justice require a new trial. It was established almost beyond dispute that one of the jurors was incompetent to serve upon the trial. There was positive proof that, a day or two before the trial, he expressed an opinion that the accused was sane at the time of the commission of the homicide and should be hung. The juror made no denial of this, except to swear that another used the expression and that he agreed to it in an unthinking way. If we could consider, in addition to the affidavit of the person to whom the juror expressed his opinion, the affidavit which contains a written admission of the juror, the latter's incompetence would be established; but the general trend of the decisions of this court is that admissions of a juror, made after the trial, can not be

used to impeach his verdict, although in the case of *Martin* v. *State*, 25 *Ga.* 494, a new trial was granted solely upon the ad-- missions of a juror.

Furthermore, it appears from the record, that on the trial. Mr. Rountree was the leading counsel for the defense; that af-- ter two speeches had been made on Wednesday, Mr. Rountree was taken ill with a severe attack of cholera morbus, and the court adjourned from time to time until Friday afternoon. At that time Mr. Rountree appeared, having previously filed an affidavit by his physician that he was physically unable to con-- duct the case, and stated in his place in court that he had been sick since Wednesday night with this attack of cholera morbus,, that he was unable to proceed with the argument, and that he,, having tasted no food in fifty-six hours, could not in his then condition do his client justice. The refusal, under these cir-- cumstances, to grant a mistrial is assigned as error. The trial judge, in approving this ground of the motion for new trial, says, in substance, that in a private conversation he had an-- nounced to Mr. Rountree a willingness to take another recess, that Mr. Rountree did not so understand the court, that the announcement was not made from the bench, that in his opin-- ion Mr. Rountree was able to make his argument to the jury,, and that he ordered the trial to proceed. The motion for mis-- trial was made in open court, and in open court the judge overruled it. What was said in private conversation off of the bench was not binding upon the judge or counsel, for it was not, such a ruling as could be excepted to and assigned as error in this court. *Grant* v. *State,* 97 *Ga.* 789. There was an affidavit of Mr. Rountree's condition, and his statement in his place that he was unable to make the concluding argument for his client. The judge, it seems, thought that he knew the condition of Mr. Roun-- tree better than did the latter or his physician. When an attor-- ney makes a statement in his place, it is considered as binding as though he were under oath. . This attorney, therefore, stated in a manner equivalent to an oath that he was too ill, on ac-- count of a sudden attack of cholera morbus and the consequent, weakness and debility, to proceed with the trial. It does seem to us that an attorney who had been thus afflicted, who had.

been without food from Wednesday night until Friday after-noon at four o'clock, was physically incompetent to discharge properly the duties of his office on the trial of, a murder case.

The constitution and laws of this State guarantee to every person charged with an offense against its laws a fair and impartial trial and the benefit of counsel. Whether or not the accused was guilty of murder, whether or not he had capacity to form a criminal intent, his guilt must be ascertained in a fair and lawful manner. As was said by Warner, C. J., in the case of *Moncrief* v. *State*, 59 *Ga.* 470, 472, "The defendant may or may not be guilty of the offense with which he is charged; but if he is guilty, that is no reason why the court should be less careful to see that he is tried and convicted in accordance with the laws of the State, inasmuch as the penalty is loss of life." Believing that this has not been done in the present case, we can not as judicial officers affirm the conviction, but must, in the performance of our duty, reverse the judgment of the trial court and direct that the accused be again put upon trial.

3. The motion for new trial contained many grounds with which we do not here deal. Some of these the trial judge did not verify as made, but qualified and explained in approving them. As they now stand, it is not necessary to mention them here. None of them will be at all likely to arise upon another trial of this case, and a decision of them would not be helpful.

*Judgment reversed. All the Justices concurring, except Lewis, J., disqualified.*