COOPER *v.* THE STATE.

43

No. 10853. February 18, 1936. Rehearing denied March 20, 1936.

*L. B. Guillebeau, Howell Brooke, W. O. Cooper Jr.,* and *Ellis McClelland,* for plaintiff in error.

*M. J. Yeomans, attorney-general, John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens, B. D. Murphy,* and *J. T. Goree,* contra.

Atkinson, Justice. James T. Chappell was employed in the plant of a business enterprise located on the east side of West Peachtree Street in Atlanta, slightly north of the intersection of Third Street. At the southwest corner of those streets was a grocery-store, adjoining which on the south was a drug-store, both facing West Peachtree Street. At the edge of the sidewalk in front of the grocery store was a letter-box. About six o'clock in the evening of November 4, 1932, Chappell at the close of business walked across the streets for the purpose of obtaining a newspaper at the drug-store and mailing some letters, intending to return to his automobile in which his wife was waiting on the east side of West Peachtree Street between the place of business and Third Street, and to go to his home. At the letter-box he came in contact with a stranger, and both men were seen standing in front of the grocery store and near the letter-box engaged in conversation. Mrs. Chappell several times sounded the automobile horn as signals for Chappell to come. As he was in the act of leaving for his automobile the other man shot him with a pistol and fled west

on Third Street to a waiting automobile which he entered and passed out of sight, continuing west along Third Street. Chappell fell on the sidewalk and immediately afterwards when his wife reached him, exclaimed: "A man has held me up! I have been shot! Call Jack Loyless . . [the superintendent of the plant] and the police, and take me to the hospital. . . I can not feel in my leg." Just before the shot was fired Chappell, in an apparent condition of restraint, was seen by a person passing him and the man, and was heard to say to the man: "I don't know anything about it." Chappell was carried to the Crawford Long Hospital. On November 7, a police officer exhibited several photographs to him, one of which he declared to be a photograph of the person who shot him. The picture was known by the officer to be a photograph of Charles M. Cooper. The bullet entered the body just below the left armpit, passed through the lung and the spinal cord, immediately producing paralysis of the limbs and whole body below the middle of the stomach. After detention at the hospital for ten weeks he was carried to his home, still in his paralyzed condition, where he remained about eight and a half months. His condition becoming worse, he was removed to the Georgia Baptist Hospital on October 1, 1933, where he was retained four days and then sent back to his home in a hopeless condition, where he lingered until he died on October 9, 1933, from the effects of the wound. Cooper was arrested in January, 1934, the officers having made search for him from the day of his identification by photograph as above stated. An indictment was returned on January 26, 1934, against Charles M. Cooper, alias Charles Stanton, charging him with the murder. He was tried and convicted on April 26, 1934, and a new trial was granted by the trial court. On his second trial he introduced evidence tending to show an alibi by reason of his absence from Atlanta and his presence in the City of Miami, Florida (a distance of more than 700 miles, and running time 14 hours by automobile) on the 2d and 3d and morning of the 4th day of November, prior to the shooting on the evening of November 4th. As to his presence in Miami on the 3d and the morning of the 4th of November, there was conflict in the testimony of his witnesses. He also made a statement before the jury, in which he declared his continuous absence from Atlanta from June 13, 1932, to November 29 or 30, 1932, being first in Tampa, Florida, and then in Miami,

Florida. The State introduced evidence tending to prove its case as hereinbefore outlined, and to identify the defendant as present in Atlanta and as the actual perpetrator of the crime, thus combating the defense of alibi. On November 10, 1934, the jury returned a verdict finding the defendant guilty, without any recommendation, and he was sentenced to be electrocuted. He made a motion for a new trial, which was overruled, and he excepted.

■ Three days after the wound was inflicted upon Chappell, and eleven months before his death, a police officer exhibited to him, while in the Crawford W. Long Hospital, certain photographs from which he identified one "as being a picture of the person who shot him." As a witness for the State the officer gave testimony as above, and identified the picture as a picture of the defendant, "taken by our identification bureau." Prior to the offering of this testimony, the wife of Chappell had testified, that "several days" before he died her husband, after the doctor had told him he could not get well, talked to her about his condition, "and said he knew he was going to die." And he said what brought about his condition "was a bandit held him up and shot him. . . That when they got the man whose picture he had identified in the hospital they would have the man who shot him." The testimony of the officer was admitted in evidence over the objection that the declaration to the officer "was not admissible as a dying declaration, because said alleged declarations of the deceased were made, if made, more than eleven months before the death of the deceased, and were not admissible as dying declarations, and were not admissible as a part of the res gestæ, because said declarations, if made, were made about three days after the deceased was shot, and that said alleged declarations were not admissible because they were only hearsay evidence."

In admitting the evidence the judge stated to the jury: "I permit this testimony to go to the jury, and will instruct you fully about it when I come to deliver the charge in this case." The only instruction given to the jury in reference to the evidence was as follows: "The State contends in this case, which the defendant denies, that the deceased, just before his death and while in the article of death and being then conscious of his hopeless condition, made what the law defines as a dying declaration as to the cause of his death and the person who killed him. What the truth of

this contention is would be for you to determine from the testimony in this case and the defendant's statement. A rule of law of this State is that dying declarations made by any person in the article of death, who is then conscious of his condition, as to the cause of his death and person who killed him, are admissible in evidence in a prosecution for the homicide. Whether a deceased did so or not, whether he made such dying declaration or not, whether it was made just before his death, and whether the deceased was then in the article of death, and whether he was then conscious of his condition, are all questions for the jury to determine from the evidence in the case and the defendant's statement, the jury being also the judges of the credibility of the deceased and whether or not such statement, if made, was true. To render admissible in evidence any statement as a dying declaration made by any person as to the cause of his death and the person who killed him, the law provides that it is necessary that the jury should believe beyond a reasonable doubt that such alleged declaration was made, if made, while the deceased was in the article of death and that he was then conscious that he was in the article of death and of his hopeless condition, though not necessarily immediately before his death. In permitting a witness to testify as to an alleged dying declaration, the court admits such evidence only upon prima facie proof of its verity, but it is the province of the jury to determine whether or not any such alleged declaration was in fact made as a dying declaration, and whether or not it was made by the deceased while in the article of death, and also whether made while the deceased was conscious of his hopeless condition. If not, such alleged dying declaration should not be considered by the jury at all, although you should believe it was made, because such evidence would not be admissible and should be disregarded by the jury. Dying declarations, when made, and where properly admitted, should be received by the jury with great caution, and all the facts, circumstances, and surroundings may be considered by the jury in determining the probative value of such declaration, or whether or not the declaration was true, if made, whether or not it was in fact made; and the jury should also consider any bias or feeling or prejudice, if such, in the mind of the deceased, and all the facts and circumstances of the case, in determining the probative value of such declaration, if it was made, and in passing upon the credibility of the deceased. As

previously stated, all the other rules of law applicable to the credibility of the witnesses who may testify in a case would also apply with equal force to a deceased person whose statements are offered and admitted in evidence. You would be authorized to consider, as stated, the mental and physical condition of the deceased and the effect of any drugs or medicines on him, and to consider all the facts and circumstances and his mental condition at the time. It is for you to determine whether or not such declaration was made as a dying declaration, whether or not it was true, and it would be for you to ascertain the truth of the case, as stated."

The controlling question raised by the foregoing objections to the testimony of the officer is whether the declarations made by Chappell to the officer were admissible as dying' declarations. In the Code of 1933, § 38-307, it is declared: "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." In *Jones* v. *State,* 130 *Ga.* 274 (2) (60 S. E. 840), it was said: "In the trial of a murder case, if at the time of making declarations the condition of the wounded party making them, the nature of his wounds, the length of time after making the declarations before he expired, and all the circumstances make a prima facie case that he was in the article of death and conscious of his condition when he made the declarations, such declarations should be admitted in evidence by the court under proper instructions to the jury." See also *Mitchell* v. *State,* 71 *Ga.* 128; *Barnett* v. *State,* 136 *Ga.* 65 (4) (70 S. E. 868); *Jefferson* v. *State,* 137 *Ga.* 382 (3) (73 S. E. 499). The rule was thus stated and applied in *Hawkins* v. *State,* 141 *Ga.* 212 (3) (80 S. E. 711): "In order to admit dying declarations for the consideration of the jury, it is necessary to make out a prima facie case showing that the deceased was in articulo mortis and conscious of his condition. When this is done, the declarations should be admitted; and whether the person making them was in articulo mortis and was conscious of his condition are questions of fact for the jury to determine, under proper instructions from the court." The record of file in this court shows that the declaration was made about one hour after the declarant was shot and about three hours before he died. The principle was restated in *Fitzpatrick* v. *State,* 149 *Ga.* 75 (99 S. E. 128). The

declarant lived about eighteen days after he was shot. Declarations were made to the attending physician on several occasions. The last occasion was about five or six days before death ensued. See also 30 C. J. 254, § 497.

In *Coart* v. *State,* 156 *Ga.* 536 (119 S. E. 723), it was said: "(*a*) Declarations of a decedent as to the cause of his death and the circumstances of the killing are not admissible unless it be made to appear to the court, by a prima facie showing, that the statements attributed to the deceased were made when he was in a dying condition, and that he was conscious of that fact at the time the statement was made. After an alleged dying declaration has been admitted to the jury upon prima facie proof of its admissibility, nevertheless the jury should be instructed that the statements attributed to the deceased should be received and considered with great caution and should have no weight unless the jury are satisfied from the evidence that such statements were made by the deceased at a time when he was in a dying condition and that he was at that time conscious that he was dying. However, an alleged dying declaration of the victim of a homicide, which was reduced to writing, should not be rejected merely because such statement was made several days prior to his death; nor should it be repelled because the deceased had made a prior statement in writing, when it appears that the later statement of the deceased declarant, which was introduced in the trial, was the same as the one which he had previously signed and which had been read to him. (*b*) The question as to whether one who did not actually die until October 27th was in a dying condition when he made a statement six days previously is one for a jury." In that case it appeared that Coart had inflicted the wound upon McNiece on October 11. The victim made a written declaration on October 14 and another that was identical on October 21. He died on October 27. At the time of signing the statement of October 21 he asked if the contents of the writing were the same as the statement which he had previously dictated and signed on October 14, and, on being assured in the affirmative, stated that it was unnecessary to read it to him again. It was said, in the opinion delivered by Mr. Chief Justice Russell: "The statement having been signed by McNiece, neither the court nor the jury could know that the information which was given to McNiece and upon which he relied in dis-

pensing with the reading was the truth, unless an opportunity for comparing the two were afforded. The declaration of October 14th was admitted purely as a corroborative circumstance, and the judge stated at the time of its admission that it was to be considered for that purpose only. Under the evidence as to the final statement, the statement of October 14th was really a part of the res gestæ of the final declaration."

In 1 Wharton's Criminal Evidence (10th ed.), 559, § 287, it is stated: "Declarations not admissible because, at the time of making, the declarant did not believe he was going to die, may become admissible by subsequent affirmation, where they were referred to and affirmed as to their truth at the time when the declarant was conscious he was dying. Such affirmation may be made by signs. A prior written statement made under hope of recovery may become competent as a dying declaration, where it is reaffirmed by the declarant when he believes himself to be in extremis, and this even where the statement was merely shown to him, but not read to or by him, at the time of the reaffirmance." The rule has been applied in the following cases. Bryant v. State, 35 Tex. Cr. 394 (6); Johnson v. State, 102 Ala. 1 (3) (16 So. 99); Sims v. State, 139 Ala. 74 (4) (36 So. 138, 101 Am. St. R. 17); State v. Garth, 164 Mo. 553 (2) (65 S. W. 275); State v. Evans, 124 Mo. 397 (2) (28 S. W. 8); Mocabee v. Commonwealth, 78 Ky. 380; People v. Crews, 102 Cal. 174 (36 Pac. 367). In the instant case, there was additional and sufficient evidence to show that at the time of Chappell's declarations to his wife, "several days"—"about ten days" before death, he was in the article of death and conscious of his condition. In these circumstances his declarations to his wife were admissible, to be considered by the jury under proper instructions from the court on the law of dying declarations within the meaning of the Code. And the declarant, by reference to his prior declarations to the officer, made them a part of the declarations to his wife. Hence, whether or not the declarations to the officer would have been admissible if considered separately, they were admissible when considered in connection with and as a part of the declarations to the wife. The declarations to the wife would not be understandable without resort to the declarations to the officer, but are clear and relevant when considered in connection with them. In *Johnson* v. *State,* 169 *Ga.* 814 (3) (152 S. E. 76), the effect

of the length of intervening time between the declaration and death was discussed, and on the ruling made the Justices were divided. The charge of the court here excepted to was a correct application of the law; and the failure to instruct the jury more specifically with reference to admissibility of the evidence did not render it erroneous.

■ The ruling announced in the second headnote does not require elaboration.

■ After the defendant had submitted evidence as to alibi and made his statement before the jury, the court admitted, over objection, evidence that prior to November 4, 1932, defendant and Wallace Hughes were accustomed to register at a hotel in Atlanta and were assigned different rooms, and on occasions Hughes would go into Cooper's room; that in June, 1932, about 4:30 a. m., Hughes shot and killed two men in a café, one door from the hotel, and in five or six minutes the defendant "walked up." The ground of objection was irrelevancy. The court, over similar objection, and because it tended to put his character in issue, admitted in evidence testimony of Wallace Hughes, as to association with the defendant all day and all night at the time of the above-described homicide; that they had planned to rob the café; that in pursuance of the plan Cooper drove an automobile and waited for Hughes to do the robbing and return to the automobile in which Cooper would help him get away; that Hughes went to the café, and in attempting to "hold up" shot and killed two men with a pistol which Cooper had given him at the hotel and which they had used in robbing a different place on Marietta Street that night; that he did not see Cooper any more until he, Hughes, was tried for the murder, and that prior to the night in question Cooper and Hughes, in May, 1932, with pistols held up and robbed still another place on West Peachtree Street near Pershing Point in Atlanta. Over similar objection two other witnesses were permitted to give testimony identifying Cooper and Hughes as the persons who with pistols held up and robbed the place on Marietta Street above mentioned; also testimony of another witness to identify them as the persons who with pistols held up and robbed the place near Pershing Point. The admission of this evidence is complained of in grounds 3, 4, 5, 6, and 7 of the motion for a new trial. This brings up the question of admissibility of evidence

of crimes other than the one with which the defendant is charged in the indictment. In *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), it was held: "As a general rule, evidence of the commission of one crime is not admissible upon a trial for another, where the sole purpose is to show that the defendant has been guilty of other crimes, and would, therefore, be more liable to commit the offense charged; but if the evidence is material and relevant to the issue on trial, it is not inadmissible because it may also tend to establish the defendant's guilt of a crime other than the one charged." Following this ruling it was further held that the evidence in question was admissible as tending to show motive and identify the defendant as prepetrator of the crime.

In *Williams* v. *State,* 152 *Ga.* 498, 521 (110 S. E. 286), it was said: "The general rule is, that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible; but to this rule there are several exceptions. Among them is the admissibility of evidence showing or tending to show the commission of crimes other than that for which the accused is on trial, for the purpose of showing motive, plan, or scheme. *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), and authorities on the subject referred to in both the majority and minority opinions; *Hill* v. *State,* 148 *Ga.* 521 (97 S. E. 442); 12 Cyc. 405, 410; 1 Michie on Homicide, 714, § 166, Id. 843, § 172." It was held that the evidence there in question was admissible. The rule was also stated and similarly applied in *Merritt* v. *State,* 168 *Ga.* 753 (149 S. E. 46); *Wilson* v. *State,* 173 *Ga.* 275 (160 S. E. 319); *Suber* v. *State,* 176 *Ga.* 525 (168 S. E. 585); *Tucker* v. *State,* 180 *Ga.* 87 (178 S. E. 152); *Honea* v. *State,* 181 *Ga.* 40 (181 S. E. 416); *Loughridge* v. *State,* 181 *Ga.* 261 (182 S. E. 12), and in other cases. The principle was stated in *Booth* v. *State,* 160 *Ga.* 271 (127 S. E. 733); but it was held that the evidence there in question came under the general rule and not under the exception, and consequently was inadmissible. Two of the Justices dissented, and one merely concurred in the judgment of reversal. The facts of that case were quite similar to those in the present case, to the extent that the previous crimes related to separate robberies accomplished by assaults committed with a blunt instrument, as was

the crime with which the defendant was on trial. In the instant case the evidence as to the waiting automobile in which the assailant escaped after firing the shot, the proximity of the place to the plant in which Chappell was employed, the hour of the assault, the demeanor of Chappell immediately preceding, and his exclamation at the time of the shooting as to being held up, and his request to notify the superintendent of the plant, tended to show a preconceived plan by the assailant to rob the institution by forcing Chappell, at the point of the pistol concealed from public view, to give him access to the building, and to accomplish his escape by means of the automobile. And the evidence as to shooting Chappell when he started to leave the place tended to show a motive to facilitate escape by the assailant after failure to complete the robbery, and to prevent his subsequent identification by Chappell. Such being the circumstances of the crime as committed, the evidence objected to as to other comparatively recent robberies in the same city committed by the "hold-up" plan with pistols in which the defendant on trial participated, tended to show a general plan of the defendant to perpetrate "hold-ups" and commit robberies in that vicinity, including the attempted "hold-up" in question. In the circumstances the evidence to which the objections relate tended to show a plan and motive by the defendant for commission of the crime in question, and to identify him as its perpetrator. The judge did not err in admitting the evidence over the objections.

■ The eighth ground of the motion for a new trial complains of the charge: "During the progress of this trial, gentlemen, certain testimony was offered relating to other alleged acts of the defendant, or in which it is alleged the defendant participated. The court undertook to state to you at that time for what purpose such testimony was admissible, and admissible only for the purpose as then ruled and stated, to illustrate, if it does, the question of identity, the question of motive, and bent of mind as applied to this particular charge we are now trying. In order that this ruling may be clearly understood, it is necessary that you should remember that testimony relating to other alleged acts was admitted only for that restricted and particular purpose, to illustrate, if it does, the question of intent, or identity of this defendant, or the question of motive of this defendant, or the question of bent of

mind of this defendant, as applied to this particular charge, if it does illustrate the question of identity or motive or of bent of mind. The law is that on a prosecution for a particular offense, evidence which in any manner might tend to show that the accused may have committed another offense, wholly independent of the charge for which he is on trial, even though it may be a similar offense, is irrelevant and inadmissible, and there is nothing more clearly or positively stated in the law, and it is a general rule of law; and you are now again instructed, in addition to the instructions given at the time, that such testimony, where admitted, is admitted as to other alleged offenses, only for you to consider as it might or not throw light on the question of identity, motive or bent of mind, if it does, as applied to the case that you are now trying." This charge was not erroneous, as contended, on the ground that "it submits to the jury, for their consideration, evidence which is irrelevant, immaterial, inadmissible, and tends to put the defendant's character in issue, and relates to separate and independent transactions in no way connected or related to the offense for which the defendant was on trial, all of which evidence should have been wholly excluded from the consideration of the jury."

■ The ninth ground assigns error upon the charge quoted in the first division of this opinion, and upon omission to charge without a request therefor. After setting forth the charge as given by the judge, the ground of the motion for new trial proceeds: "Movant shows that the foregoing is all that the court charged the jury on the subject of dying declarations, and that the testimony to which said charge had reference is the following testimony of E. W. Ginn and Mrs. James T. Chappell. A State's witness, E. W. Ginn, testified as follows: 'My name is E. W. Ginn. I am a city officer. I worked as a city detective on the case involving the shooting of Mr. James T. Chappell. I saw Mr. Chappell in the afternoon of the following day after he was shot. He was at Crawford Long Hospital. I am not sure about it, but I think I saw him, following that, for the next two or three days. I exhibited three pictures to him. Among them was a picture of this defendant. That was about the third or fourth day after he was shot. I recall that he was shot on November 4th. If it was the third day, it would have been the 7th. If it was the fourth day, it would have been the 8th. It was in the afternoon. I do not know the exact

date. It was somewhere from 12 o'clock on. I believe it was between 2 and 4. I did not see him around the same hour the next day. I was not back the next day. I am sure that the day I exhibited the pictures to him was the day that I was there in the afternoon. This picture with a letter "M" on it and a straight line drawn under the "M" for identification is one of the pictures that I exhibited to Mr. Chappell along with two others. They were all of the same type, that is, two different views of the person, one front and one side. They were all three of the same type. They were pictures taken by our identification bureau and all made alike. This picture marked "M" is a picture of this defendant. Mr. Chappell identified the picture that you showed me as being a picture of the person who shot him. That was the picture of the defendant, the picture that he identified.' Movant objected to the admission of said testimony at the time the same was offered, and did then and there urge the following grounds of objection thereto: Movant objected to the admission in evidence of the statements alleged to have been made by James T. Chappell, the deceased, to said E. W. Ginn, as above set out, and objected to the admission in evidence of said testimony as to said alleged identification by the deceased of a photograph of the defendant as being a photograph of the man who shot the deceased; the grounds of objection being that what the deceased, James T. Chappell, might have said to said witness E. W. Ginn was not admissible as a dying declaration, because said alleged declarations of the deceased were made, if made, more than eleven months before the death of the deceased, and were not admissible as dying declarations, and were not admissible as a part of the res gestæ, because said declarations, if made, were made about three days after the deceased was shot, and that said alleged declarations were not admissible because they were only hearsay evidence. The ruling of the court on said objections to said testimony is as follows, to wit: 'Gentlemen, I permit this testimony to go to the jury and will instruct you fully about it, when I come to deliver the charge in this case.'

"Before said witness Ginn testified, a State's witness, Mrs. James T. Chappell, testified as follows, to wit: 'Between the time that he (James T. Chappell) was brought back from the hospital and the time of his death the doctor in my presence made a statement to him as to his condition. He told him that he could not get well.

. . The doctor told him from the time of the operation, when he came out from the anæsthetic, that he could not get well. He told him all along he could not get well. I heard my husband say whether he could get well or had found out about it after he came back from the hospital. He talked to me about his condition, and said he knew he was going to die. He told me about his business affairs, and how he wanted me to attend to them. He lived about ten days after that. He talked with me about it up until just before he died. . . After the doctor told him he could not get well, he talked to me about his business affairs and other things and his condition. He said the thing that brought that condition about was a bandit held him up and shot him. He told me that when they got the man whose picture he had identified in the hospital they would have the man who shot him. I was not present when he identified that picture. I just know about that incident from what my husband told me on his death bed.' Movant shows that said charge of the court is erroneous for the following reasons, to wit: (a) Because the court failed to instruct the jury that they could not consider said testimony of said witness Ginn as to what the deceased is alleged to have told said witness Ginn, unless the jury believed that the deceased made the declarations alleged to have been made by him to said Mrs. James T. Chappell, as set out in said testimony, and unless they further believe that said declarations of the deceased to said Mrs. Chappell had reference to what the said witness Ginn testified that the deceased told him, as herein set out, as to a photograph of the defendant being a picture of the person who shot him. (b) Because the court failed to instruct the jury that said testimony of said witness Ginn could not be considered except in connection with said testimony of said Mrs. Chappell, since the deceased could not have been in the article of death at the time that he is alleged to have made the declarations to said witness Ginn, as herein set out, because the witness Ginn testified that the declarations were made about November 7, 1932, and the uncontradicted evidence shows that the deceased died October 9, 1933. (c) Because the court erred in failing to instruct the jury that they could not consider as evidence the declarations alleged to have been made to said witness Ginn, as herein set out, unless the jury believed that the deceased made, while in the article of death, the declarations alleged to have been made by him to said

Mrs. Chappell, as herein set out, and unless they further believed that said declarations to said Mrs. Chappell had reference to the alleged identification of a photograph of the defendant by the deceased, as set out in said testimony of said witness Ginn. (d) Because the court erred in failing to instruct the jury that they could not consider said testimony of said witness Ginn, except in explanation of said testimony of said witness Mrs. Chappell, if the jury found that it did explain the said testimony of the said witness Mrs. Chappell."

This ground to a large extent comprehends questions that have been dealt with in previous divisions of this opinion. The charge as given was a correct statement and application of the law. If further instructions as contended would have been proper, the defendant should have made appropriate requests for them. It was not erroneous to overrule this ground, for any reason assigned.

■ The ruling announced in the sixth headnote does not require elaboration. *Judgment affirmed.* *All the Justices concur.*