### 23069.   MOORE v. THE STATE.

SUBMITTED SEPTEMBER 15, 1965—DECIDED JANUARY 7, 1966.

*James O. Goggins,* for plaintiff in error.

*Lewis R. Slaton, Solicitor General, Carter Goode, J. Walter LeCraw, George K. McPherson, Jr., Arthur K. Bolton, Attorney General, J. R. Parham,* contra.

COOK, Justice.   Keith Donald Moore was charged with robbery by the use of an offensive weapon.   The indictment alleged that the crime was committed on June 26, 1964, by threatening two named persons with a pistol and taking from them the sum

of $23,200, the property of The Citizens & Southern National Bank. The jury found the accused guilty and recommended mercy. His motion for new trial on the general grounds was amended by the addition of thirty special grounds, and the exception is to the denial of the motion for new trial as amended. The bill of exceptions states that ground 13 is not insisted on.

■ On the trial of the case testimony was introduced in connection with the robbery of a branch of The Citizens & Southern National Bank, located at 3005 Peachtree Road, Atlanta, on June 26, 1964, and an attempted robbery of the same bank on December 9, 1964, in which attempt the defendant was apprehended. In special grounds 4, 5, 6, and 7 it is asserted that it was error to admit in evidence, over objection of the defendant, testimony relating the events transpiring at the time of the attempted robbery in December. In grounds 10, 16, 17, 18, 19, and 20 it is asserted that it was error to admit in evidence exhibits in connection with the attempted robbery in December. This testimony was allowed by the trial judge with instructions to the jury that it was admitted for the purpose of showing identification and showing the state of mind, plan, motive, and scheme of the defendant, and for no other purpose.

"On a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly distinct, independent, and separate from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible, unless there be shown some logical connection between the two from which it can be said that proof of the one tends to establish the other." *Bacon v. State,* 209 Ga. 261 (71 SE2d 615) ; *Henderson v. State,* 209 Ga. 72 (70 SE2d 713) ; *Rosborough v. State,* 209 Ga. 362 (72 SE2d 717) ; *Wilson v. State,* 212 Ga. 412 (2) (93 SE2d 354). There are many unanimous decisions of this court holding that testimony concerning other crimes is admissible if such testimony aids in identification and shows the state of mind, plan, motive, and scheme of the accused.

Two of the witnesses whose testimony is claimed to have been improperly admitted in the present case, Mrs. Suzanne Ingle and Mrs. Ailene Ahern, testified that they were employees

of the bank at the time of the robbery in June and the attempted robbery in December, and they positively identified the defendant as the perpetrator of both crimes. The evidence showed several points of similarity in the method of operation used in both crimes. Among these were the following: Mrs. Ingle testified that the routine was the same. In both instances the perpetrator of the crime arrived at the bank prior to its opening time, and placed the employees of the bank under coercion as they arrived by threatening them with a pistol. In both instances he forced Mrs. Ingle and Mrs. Ahern to walk around the lobby of the bank. In the June crime the robber procured the keys to the car of Mrs. Ingle in a parking lot, forced her to enter the bank with him, and later used her car to escape from the scene of the robbery. In the December attempt the defendant held Ray West, an employee of the bank, and his family captives during the night before the attempt, and entered the bank with this employee. When he attempted to escape he called Mrs. Ingle by her name "Ingle" and asked her where her car was. When she told him that she was riding with someone else, he procured a car from one of the officers of the bank, and then forced Mrs. Ingle to drive the car.

There were sufficient points of similarity in the method of operation in the two crimes to authorize the introduction in evidence of testimony in regard to the attempted robbery in December, and the trial judge did not err in allowing the admission of this testimony for the purposes stated. Compare *Green v. State,* 172 Ga. 635 (3) (158 SE 285); *Cooper v. State,* 182 Ga. 42 (3) (184 SE 716, 104 ALR 1309); *Barkley v. State,* 190 Ga. 641 (2) (10 SE2d 32); *Emmett v. State,* 195 Ga. 517 (3) (25 SE2d 9); *Fuller v. State,* 196 Ga. 237 (1) (26 SE2d 281).

■ In ground 8 it is asserted that counsel for the defendant was limited in his cross examination of the witness Ray West. Counsel had asked this witness if the room where he was taken to identify the defendant adjoined the room where the other bank employees were, and he had replied that it did. Counsel then asked: "So it is possible after the first identification was made the other employees could have heard it, isn't that true?" The objection of the solicitor general to the witness testifying as to the "possibilities" was sustained.

In ground 9 objection is made because the witness Lt. C. J. Strickland, of the Atlanta Police Department, was not allowed to answer the question of counsel for the defendant on cross examination as follows: "Have we missed any supervisory personnel, would the remaining personnel be detectives, first or second grade?" The solicitor general raised the question of materiality of this testimony, and the judge sustained the objection with the suggestion that the witness might be recalled if it later appeared that the testimony was relevant.

In ground 14 error is assigned on the refusal to allow counsel for the defendant on cross examination to elicit an answer from the witness Ted Simmons to the following question: "Were you interested in his emotional problem, do you think that would have been in your interview if he—" This witness was a newspaper reporter for the Atlanta Constitution and he had testified concerning incriminating statements made by the defendant to him in an interview after the defendant's arrest. In ground 15 error is assigned because this same witness was not allowed to answer the question: "Do you know I have been counsel for a libel suit against the Constitution about three years ago?"

"While the right to a cross examination, thorough and sifting, shall belong to every party as to the witnesses called against him (*Code* § 38-1705), yet the scope of the cross examination rests largely within the discretion of the trial judge, to control this right within reasonable bounds, and his discretion will not be controlled by a reviewing court unless it is abused." *Post v. State*, 201 Ga. 81, 84 (39 SE2d 1); *Gravitt v. State*, 220 Ga. 781, 785 (6) (141 SE2d 893). These grounds do not show an abuse of discretion by the trial judge in limiting the scope of the cross examination of these witnesses.

■ Ground 11 recites the testimony of Angelo M. Robbe, Special Agent with the Federal Bureau of Investigation, not in the presence of the jury, laying the foundation for the admission in evidence of the written confession of the defendant. Ground 12 asserts error in the admission of this confession in evidence, over the objection of counsel for the defendant that the evidence showed that the confession was induced by "hope of benefit." *Code* § 38-411.

Robbe testified that the confession of the defendant was freely and voluntarily made. He stated that he told the defendant that anything he said could be used against him; that he was entitled to counsel; that the witness could not help him. The alleged confession of the defendant was obtained at the time he was in custody after the attempted robbery on December 9. The defendant had told employees of the bank that he was holding certain persons in Tucker, Georgia, as hostages, and he pretended to be talking with an accomplice on electronic equipment. In the testimony laying the foundation for the admission of the defendant's confession in evidence, in response to the question, "Did you subsequently discuss the June 26 robbery with him?", Robbe stated: "I did subsequently. I didn't talk to him but about a minute. I asked the question, was there another man on the loose with a rifle. He said no, I am the only one. I knew he had some electronic equipment with him which indicated possibly another person. He said no, there is nothing to this. This is primarily what I wanted to find out. I spoke to him briefly, I just said this: You don't have to say anything but I think it would be helpful if you would and we could iron this all out. He said he wanted to think about it a few minutes. I asked everybody to leave the room and leave him there to do some thinking. Everyone did leave the room. I am pretty sure, I am fairly certain everyone left the room." Robbe further testified that before the defendant made any statement the witness again advised him of his rights, suggested that he should call an attorney, and told him that the court would supply him with counsel if he could not afford one.

In the evidence before the jury the witness Robbe admitted on cross examination that he recalled stating, "You are in a bad spot and you are in trouble." He also admitted that he had testified while the jury was out "that it would be helpful if you would talk about it." The trial judge admitted the confession to the jury with the instruction that it was a matter for them to determine whether or not the confession was freely and voluntarily made.

"If there is a conflict as to whether or not a statement, admission, or confession was made freely and voluntarily, that ques-

tion then becomes one of fact for determination by the jury, provided a prima facie showing is made by the State that such statement was made freely and voluntarily and without hope of benefit or fear of injury." *Smith v. State,* 215 Ga. 51 (4) (108 SE2d 688); *Garrett v. State,* 203 Ga. 756 (48 SE2d 377).

The only testimony in the prima facie showing made by the State which might in any way indicate that the defendant was offered hope of benefit was the statement by Robbe, "I think it would be helpful. . ." When this fragmentary statement is considered in its context, it is plain that the officer was trying to ascertain whether the defendant had an accomplice as he had claimed, and whether this claimed accomplice was holding persons as hostages; and the statement that "it would be helpful" was in this connection. The defendant could not reasonably have understood that Robbe was promising him any help, if he would give the needed information.

Since a prima facie showing was made by the State, the written confession of the defendant was admissible in evidence, and it was a question for the jury whether or not it was freely and voluntarily made, without the slightest hope of benefit. *Brown v. State,* 203 Ga. 218, 220 (46 SE2d 160); *Jones v. State,* 204 Ga. 761 (51 SE2d 831).

■ Grounds 21, 22, and 23 assert that it was error to admit in evidence a bank deposit in a Swiss bank, "an airline ticket with copies of the airline tickets from Geneva, Switzerland and tickets from Atlanta back to Geneva, Switzerland," and a passport of the United States dated May 27, 1964, with entries of the defendant's travel in Europe. These exhibits were admissible as circumstances to illustrate the theory of the State that the defendant committed the robbery in June (for which he was on trial), went to Switzerland and deposited the money obtained in the robbery in a Swiss bank; that he later returned to Atlanta with the purpose of robbing the same bank and again leaving the country and going to Switzerland; and to show similarity between the robbery in June and the attempted robbery in December.

■ In grounds 24, 25, and 26 it is asserted that it was error to allow certain testimony of Dr. William A. Moore. This

■

witness, a neurosurgeon, had performed an exploratory operation on the brain of the defendant on July 8, 1962, after a head injury the defendant received in an accident. He was called as a witness for the defendant and testified in regard to the defendant's condition at that time. He stated that he had not seen the defendant since July 12, 1962. On cross examination the solicitor general asked Dr. Moore: "Doctor, although you haven't seen him since this time he was in the hospital, based on your experience, your knowledge and ability and what you know about this defendant do you think he knows the difference between right and wrong?" Dr. Moore asked the solicitor, "At what time, Mr. Boyd, when do you want me to give an opinion about it?" The solicitor asked: "Can you give one today?" The witness replied: "I don't think I can. I have not seen this man for two and one-half years. I do have some additional notes on this patient that has not been brought out. As I say, I left town the day following the operation . . . but I was interested in the progress of this case. I turned him over to the care of neurosurgical colleague. The first thing I did when I got back in town was find out how he had gotten along and have subsequently obtained that information from Dr. Shure as well as initially from Dr. Robert Mabon who looked at him from a neurosurgical standpoint during my absence. On the basis of what I knew—" At this point counsel for the defendant objected to the witness giving his opinion because he had not seen the defendant since July, 1962. The judge stated that he could testify as an expert as to the damage and what effect that would have on his mental capacity as to whether he knew right from wrong. Dr. Moore then proceeded with his testimony as follows: "On the basis of what I know from this patient, from my own investigations and from subsequent correspondence it was my clinical impression that this man had made a satisfactory recovery from his injury and on that basis I would presume he is able to know right from wrong." Counsel for the defendant objected to this testimony because the opinion was based on hearsay. The judge then stated: "He said based on the statement what he knew. I think that would be admissible. He didn't say he got it as hearsay but on the basis

of what he knew, is that correct what you said?" The witness replied, "Yes, sir." Counsel again objected to the testimony on the ground that the opinion of the witness was based on knowledge received from the doctors mentioned. The objection was overruled and the testimony allowed.

*Code* § 38-1710 provides for the admission in evidence in proper instances of the opinions of experts. It is the rule in Georgia that the opinion of an expert witness on the sanity of a person must be based on his own observation of facts personally known to him, or he must give his opinion on hypothetical questions based on facts supported by evidence in the case.

In *Flanagan v. State*, 106 Ga. 109, 110 (32 SE 80), it was held: "The following question was propounded by the State's counsel to one of the expert witnesses introduced by the State: 'State whether, in your opinion, from your examination of [the defendant], from all that you know of him, have observed of him or heard of him, he was laboring, at the time this crime was committed, under any overmastering delusion.' To this question the witness was allowed, over the objections of the defendant's counsel, to give a negative answer, . . . To this ruling exception was taken. An expert on insanity, as was the witness of whose evidence complaint is here made, may give an opinion based upon his own examination of a person, upon his observation of that person, or upon any state of facts, supported by some evidence in the case, which he assumes as true. The jury should be informed whether he bases his opinion on his own knowledge or upon a hypothetical state of facts, and should know what portion of the evidence he has assumed to be true in forming his opinion. In the present case the witness gave an opinion which may have been based, in whole or in part, upon *what he had heard* of the defendant; and we think it should not have been received. . . 'It has never been held that a medical expert has the right to give in evidence an opinion based on information which he has derived from private conversations with third parties.' Rogers, Expert Test. § 46; Louisville etc. R. Co. v. Shires, 108 Ill. 617, 630. 'Expert opinions are admissible if based upon a state of facts which the evidence on behalf of either party tends to establish. But the

jury should know upon what facts the opinion is founded, for its pertinence depends upon whether the jury find the facts on which it rests. . . An opinion, based mainly upon representations out of court, can be no more competent testimony than the representations. If the jury are not informed what the representations were, they do not know upon what hypothesis of facts the opinion rests. If they are informed, they are still left with no evidence of the existence of the facts, except unsworn declarations of a third person out of court, which are not proof in courts of law.' Wetherbee's Ex'rs v. Wetherbee's Heirs, 38 Vt. 454. . . In the present case the expert witness testified as to his opinion based, to how great an extent does not appear, upon what he had heard. The jury had no possible means of knowing whether his opinion was not based upon an assumption of the truth of rumors or reports which the jury did not believe to be true or of whose truth there had been submitted to them absolutely no evidence. It is therefore clear that the question was improper, because it allowed an opinion based upon what the witness had heard of the accused, and that the evidence was inadmissible." While one Justice was disqualified in the *Flanagan* case, it has been followed in numerous decisions, including the recent unanimous decision in *Eason v. State*, 217 Ga. 831, 841 (125 SE2d 488).

Greater latitude is allowed in questioning a witness on cross examination than on direct examination, but such latitude does not dispense with all the rules of evidence. The question propounded to the expert witness in the present case was not designed to test his good faith, knowledge, credibility, accuracy, or the weight of his testimony on direct examination. It was an attempt to make him an expert witness for the State and to have him give an opinion on a matter in which his knowledge was derived from hearsay. Dr. Moore had testified that he performed an exploratory operation on the brain of the defendant after the defendant had received a head injury in an accident approximately two years before the crime was alleged to have been committed. The witness stated on cross examination that he had not seen the defendant in two and one-half years. His testimony could not be given any reasonable con-

struction but that the opinion he gave as to the ability of the defendant to distinguish right from wrong was based on information received from others. A party should not be allowed to introduce in evidence an opinion of an expert witness based on hearsay by the method of cross examining such witness, where such evidence would have been entirely inadmissible on direct examination.

The opinion evidence based on hearsay which was erroneously admitted concerned a vital issue in the case. The main defense of the defendant was that he was insane at the time of the commission of the crime. It is impossible to calculate the harm that may have resulted to the defendant in having this eminent medical expert give his opinion to the jury that the defendant knew the difference between right and wrong.

It was error to admit in evidence the testimony complained of in grounds 24, 25, and 26.

■ Grounds 27, 28, 29, and 31 assert error because of the sustaining of objections of the solicitor general to questions of counsel for the defendant, and ground 30 assigns error on the refusal to allow the defendant's counsel to inspect the file of a witness. All of these grounds have been carefully considered, and they are without merit.

■ Ground 32 relates to the admission in evidence of the State's exhibits of checks drawn on the defendant's bank account from January through May, 1964, showing a balance in the account of less than $43, and a microfilm of the account, over the objection that the period between May 18 and June 26, 1964, was not included, and the account was an incomplete record.

The defendant contended that the money deposited by him in the Swiss bank was obtained through a settlement of his claim for damages because of personal injuries received in the accident in July, 1962. The checks and bank record were admissible to show that this money had been spent prior to the robbery in June, 1964.

■ In ground 33 it is contended that it was error to allow the introduction in evidence of a record of the sale to the defendant on February 18, 1964, of an automatic pistol with the same serial number as that of the pistol alleged to have been

used in the attempted robbery in December, 1964. The objection to the evidence was that the pistol had not been identified as being used by the defendant in the June robbery.

Mrs. Suzanne Ingle testified that the pistol introduced in evidence looked like the one used in the robbery of June 26. Lt. C. J. Strickland, of the Atlanta Police Department, testified that the pistol introduced in evidence was taken from the automobile in which the defendant was apprehended, after a search warrant had been obtained to search the automobile, at the time of the attempted robbery of December 9. It was not error to admit the record of the sale to the defendant in evidence.

■ The defendant was positively identified as the perpetrator of the robbery on June 26. The question of his mental competency was for the jury. The trial judge did not err in overruling the general grounds of the motion for new trial.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., Candler, P. J., and Almand, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. I believe the fatal fallacy of the majority lies in its application of the requisite rules for affirmative testimony to the testimony of the doctor on cross examination. The State had the right to (1) draw from this witness for the defendant any testimony favorable to the State, and also (2) demonstrate his want of credibility by getting him to draw unsupported conclusions. Therefore, when he said his conclusions as to mental condition were based upon his own knowledge and elsewhere indicated that they were in part based upon what other doctors said, or upon correspondence with the defendant and his attorney, this should have been left to the jury to enable them to appraise his credibility.

I firmly believe the majority is mistakenly applying the rules applicable to affirmative testimony to a cross examination. I do not believe there was any error in allowing the testimony of this witness elicited on cross examination. I would affirm the judgment of the trial court.

I am authorized to state that Mr. Presiding Justice Candler and Mr. Justice Almand concur in this dissent.